[Civ. No. 41135. Second Dist., Div. Five. Oct. 30, 1973.]

In re the Marriage of ROSE SHERMAN DENNIS and
EARLE SPILIOTIS DENNIS.
ROSE SHERMAN DENNIS, Appellant, v.
EARLE SPILIOTIS DENNIS, Respondent.

## Counsel

Webster & Tyson and Richard P. B. Tyson for Appellant.

Cadoo, Tretheway, McGinn & Morgan and Alvin S. Tobias for Respondent.

## Opinion

**KAUS, P. J.**—This dispute concerns an award of spousal support. Rose Sherman Dennis ("wife") appeals from an interlocutory judgment of dissolution of marriage from Earle Spiliotis Dennis ("husband").

### Facts

The parties were married in October 1946. They have one child, a son, born in 1953. They were separated in December 1970. The dissolution hearing was held in July and December 1971. The interlocutory judgment provided, in relevant part, as follows: the wife was to have custody of the son, who attended and lived at college; the community assets of $5,255 were divided; the interests in the family home, worth about $30,000 were also divided. The wife was awarded spousal support of $200 a month for the first year, and $100 a month for the following three years. Support would then terminate. Child support of $150 a month until the son reached his "majority" was also awarded.

The couple were married for about 25 years. The wife was about 50 years old. She had been keeping some of the monthly $150 in temporary child support to cover her son's costs when he stayed with her on weekends.

The husband's gross income was $1,250 a month; his net was $866. The wife was not employed outside the home. She had not been employed for some 25 years. In the past she had worked as a riveter. Her only source of income during the years of their marriage had been about $6 a week, doing sewing. She had to give up that work because "it impaired the health of [her] eyes." Although she could "see now that [she] had [her] eyes improved," with glasses, she could "not do very close work." She was not trained to do any other work, except riveting. She had not attempted to get any training: "I raised a family." The trial court found that the wife had the ability to earn a living as a seamstress.

The wife did not want to go to work. The only thing that would make her do so was "starvation." She agreed that she wanted her husband to support her "for the rest of [her] life." She testified that she spent 24 hours a day maintaining her home. In response to the question, "What do you do around home for 24 hours a day?" She answered, "I live there."

The husband's estimated monthly expenses were $816 a month.[1] The wife claimed monthly expenses of $372[2] which would be increased by $200 if the marital home were sold.

### Contentions

■ The wife wanted spousal support in the amount of $225 a month for an indefinite period. As noted, she was awarded $200 a month for the first year, and $100 a month for the next three years. She contends that the trial court abused its discretion both in the amount of spousal support awarded and the period for which it was awarded. We disagree with the first contention but, with qualifications, agree with the second.

### I.

Both parties rely on *In re Marriage of Rosan,* 24 Cal.App.3d 885 [101 Cal.Rptr. 295]. The facts of *Rosan* must be closely compared with the facts in this case. In *Rosan,* the total community property amounted to about $54,000. (24 Cal.App.3d at p. 889.) In this case, the total community, including the family home, adds up to about $35,000. In *Rosan,* the husband's average monthly net income was more than $2,000 plus expenses of $150 a month. (*Id.* at p. 888.) In this case, the husband's average monthly net income is about $866 a month. The husband's expenses in both cases are roughly comparable. In *Rosan,* the wife had custody of a 15-year-old boy, and, for a while, an older, emotionally disturbed child. (*Id.* at pp. 891, 893.) In this case, the 18-year-old son lives at college, except for weekends; the wife does not pay any of his expenses, except to give him some of the $150 child support that the husband pays to her.

In *Rosan,* the parties had been married for some 17 years, during which time the wife, who was not employed, was accustomed "to a high standard

---

[1]The wife points out that $100 monthly attributed to the husband's automobile expenses included an item already paid for. However, the husband's testimony indicates that the particular expense was illustrative of on-going automobile expenses.

[2]The wife was unclear or confused concerning her expenses. In her petition for dissolution, she claimed $642 a month in expenses. She was confused in testifying whether her monthly needs included, or excluded, $150 in child support, and the extent to which she should include various outstanding bills.

of living." (*Id.* at p. 894.) In this case, the parties were married for about 25 years; nothing in the record suggests that the parties lived other than modestly.

The trial court in *Rosan* ordered $150 a month child support, and alimony of $400 a month for one year, $300 a month for the second year, and $200 a month for the third—and final—year. The appellate court found that the award was inadequate. (*Id.* at p. 891.)

The *Rosan* court, in evaluating the amounts fixed by the trial court for spousal support, focused on (1) the length of marriage; (2) the lifestyle of the parties; (3) the wife's absence of training *and* her "uncontroverted testimony" that she intended to undertake training; (4) the support needed for the minor child in her custody; and (5) the ability of the husband to pay such spousal support. (24 Cal.App.3d at p. 895.)

The wife in this case points out that the ratio of the husband's income in *Rosan* to spousal support, an average of $300 a month over a three-year period, is comparable to the ratio in this case, an average of $125 a month spousal support over a four-year period, and that, based on *Rosan,* the trial court abused its discretion in this case.

We disagree. First, in *Rosan,* the husband's income exceeded his estimated expenses by at least $1,000 a month. (24 Cal.App.3d at p. 894.) Second, the son in *Rosan* was younger, living with the wife,[3] and might have placed greater limitations on the wife's options in pursuing a career. Third, in *Rosan,* there was substantial evidence of a high standard of living. The final and critical factor is the wife's unwillingness in this case—short of "starvation"—to work. The importance of this factor is made clear in *Rosan*: "It may be inferred from the express reference in Civil Code, section 4801, subdivision (a) to the factor of the supported spouse's ability to engage in gainful employment that the supported spouse is to be encouraged to seek such employment. . . . When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with her or his ability, of course, that factor may be taken into consideration by the trial court in fixing the amount of support in the first instance or in modification proceedings. [Citation.] However, where there is no evidence of any unreasonable delay or willful refusal of the supported spouse to seek employment consistent with her or his health and parental responsibilities and when the other party has the ability to pay the needed support, it is inappropriate to make an order for support in

---

[3]In both *Rosan* and this case the children are each receiving $150 a month child support.

an amount substantially less than that needed. [Citing *Webber* v. *Webber*, 33 Cal.2d 153, 159 (199 P.2d 934).]" (24 Cal.App.3d at pp. 896-897.)[4]

The parties hereto separated in December 1970. At the dissolution hearing held one year later, the wife testified that she had done nothing about obtaining training and that she did not want to work. As the court said in *Webber* v. *Webber, supra,* 33 Cal.2d 153, 160: ". . . whether or not [the wife], during those 10 months, made adequate effort to find suitable work—consistent with her age, ability, and health condition—and to establish herself as at least partially self-supporting would enter into the over-all picture in determining the question of [the husband's] obligation to make some provision for her. (*Farrar* v. *Farrar, supra,* 41 Cal.App. 452, 457 [182 P. 989].)"

It is true that the wife, aged 50, had not been employed in 25 years, that her only income had been $6 a week for doing "alterations," and that she had had to give up that work because her "eyes became very weak." However, the wife's testimony regarding her corrected vision is somewhat equivocal. Moreover, there is absolutely no evidence that she was physically disabled from performing any work or that she had any responsibilities that required her presence in the home.

In the circumstances, the trial court's award of alimony did not constitute an abuse of discretion.

■ The wife next contends that the trial court, in awarding alimony, neglected to consider that the family home, owned free and clear and worth about $30,000, would be sold, requiring her to pay rent. The contention is without merit. Even if we accept as true the wife's figures, there is no abuse of discretion. The wife estimated that rent would cost her an additional $200 a month, or $2,400 a year. She estimated that she would net $12,000 from the sale of the house. Discounting both inflation, if any, and interest on the proceeds of the sale, the property award will cover her rent for a period of five years. It was not unreasonable for the trial court to determine that within five years, the wife should be sufficiently self-supporting to be able to pay rent.

## II.

■ We agree, however, that the trial court should not have ordered termination of spousal support at the end of four years, without reserving

---

[4]The court in *Rosan* was careful to point out that the wife had neither obtained employment nor followed through on her educational plans because of her responsibility for both children, including the emotionally disturbed child. (24 Cal.App.3d at pp. 893-894.)

jurisdiction to modify its order at that time. (Civ. Code, § 4801, subd. (d).) Although the evidence indicates that the wife was unwilling, rather than unable, to support herself, it should be remembered that she is 50 years old and has not been employed for some 25 years. There was also evidence that the wife's ability to support herself as a seamstress might be affected by the condition of her eyes.

It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by the wife to become wholly or partially self-supporting. *Rosan,* 24 Cal.App.3d at pages 897-898 certainly indicates that after a lengthy marriage a retention of jurisdiction to modify spousal support should be the norm and that the burden of justification is on the party seeking termination.

That burden is not met here. The court had no real assurance that at the end of the four-year period the wife will be unable to show that in spite of sincere efforts on her part, she cannot support herself adequately. It was not warranted in burning its bridges.

The interlocutory judgment must be modified to provide that the trial court retain continuing jurisdiction to extend the spousal support period beyond the termination date of January 31, 1974, upon a proper showing of incapacity by the wife.

The interlocutory judgment is affirmed with respect to the provisions for the amounts of spousal support. The judgment is reversed with respect to the provision that terminates all spousal support at the end of four years. The case is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Ashby, J., and Hastings, J., concurred.