[Civ. No. 47478. Second Dist., Div. Five. Dec. 13, 1976.]

HAROLD LOVITZ, Plaintiff and Respondent, v.
BARBARA JOY LOVITZ, Defendant and Appellant.

**COUNSEL**

Arnold Wayne and J. Paul Spector for Defendant and Appellant.

Grayson & Gross and Philip Jay Dichter for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Barbara Joy Lovitz (wife) appeals from an order made March 20, 1975, terminating spousal support on Harold Lovitz (husband's) order to show cause in re modification.

Husband and wife were married on July 10, 1949, and separated in September 1964. There are three children of this marriage. After a trial, the court ordered husband to pay to wife for her support the sum of $600 per month, continuing until wife dies, remarries, or until such payments may be modified by an order or judgment of a court of competent jurisdiction. The court also ordered division of the community property of the parties. A provision of the court's order pertinent to this appeal is as follows: "8 The minor children of the parties are now in the custody of plaintiff. Plaintiff is a fit and proper person to have and be awarded the custody, care and education of said children, subject to rights of defendant to visit said children and have them with her at reasonable times. Defendant and cross-complainant is found to be a morally fit person to have the custody of said children, but she is presently emotionally incapable of properly caring for such children and their best interests require that custody be awarded to the plaintiff."

In August of 1967, in connection with a then pending order to show cause in re modification of visitation of minor children, Howard D. Ross, M.D., wrote a descriptive report and psychiatric evaluation of the Lovitz family for the superior court. Dr. Ross' report refers to wife's treatments from approximately 1953 and concluded she required considerable emotional support from others in order to cope with the stress of daily living. The report stated she had recovered from a psychotic illness, but diagnosis for recurrence of her former illness was guarded. In conclusion, his report stated that wife would very likely require prolonged psychiatric treatment and protection from the normal stress of daily life. He further stated that the history of wife suggests that she is functioning at her maximum now (August 1967).

On August 26, 1974, husband filed an order to show cause re modification of spousal support. He alleged that wife was able to perform the duties required of a social worker, a job she has had in the past and for which she is qualified. He further alleged that he had suffered several business and financial reverses, and the expenses of raising the children had substantially increased. Further, that wife had had more than enough time to rehabilitate herself. At the hearing, three

psychiatrists rendered their opinion on wife's mental state and capacity to work. The record contains four psychiatric reports from these three psychiatrists. The first, dated January 2, 1975, is the report of William H. Rickles, M.D., who concluded as follows: "Accordingly, in my opinion, Mrs. Lovitz has sufficiently surmounted considerable psychological difficulty and shown herself to be trainable and capable of employment. Further, it is my opinion a final settlement of her financial support by her ex-husband would be psychologically beneficial to her."[1]

The second report, dated January 6, 1975, is the evaluation of Nicholas A. Bercel, M.D., who said he has been treating wife since 1969. His conclusion was that termination of wife's support was premature and potentially dangerous; that is, a danger of a relapse to manic depression. He also emphasized in his closing paragraph that financial independence for wife is a worthy therapeutic goal, but believed that some evidence of success in her present attempts are appropriate before he would conclude that she is capable of self-support.

The third report, dated January 13, 1975, apparently is a rebuttal by Dr. Bercel to the report of Dr. Rickles. In this report he points out that wife has a bi-modal manic-depressive psychosis which ran in her family, and concluded that "under the best of circumstances, there is no medically stable condition in such a disease;" and that she has not demonstrated her ability to support herself since she obtained her real estate agent's license.

The fourth report is dated March 14, 1975, and written by a court-appointed psychiatrist, Thomas V. Hoyer, M.D., which concludes that Dr. Bercel's first letter summarized his feelings and he concurred with his recommendations.[2]

---

[1]Dr. Rickles drew an analogy between wife and a hypothetical injured worker in a worker's compensation claim case, who, having settled his claim, "often" achieves emotional stability on his return to work.

[2]Dr. Hoyer's statement is as follows: "I cannot in any way see that Mrs. Lovitz is capable of functioning in any effective or employable manner as a social worker despite her past training in this field of many years ago. Her present level of work adjustments seems apparently suitable to her level of functioning, but I basically do not see her as fully employable at the present time and definitely will agree with Dr. Bercel that her manic-depressive illness is in only partial remission. I will again refer the court to the last report of Dr. Bercel dated January 13, 1975 with which I am in basic agreement. With reference to Dr. Rickel's comparing this (case) with a workmen's compensation case, the undersigned can understand his argument but cannot agree that this particular person, i.e., Mrs. Barbara Lovitz, has sufficiently demonstrated a current ability to work without interpersonal difficulties and reactions to job stress of a normal and expectable degree. . . . The final two paragraphs of Dr. Bercel's first letter summarized my feelings and I concur with his recommendations as stated therein."

The trial court, after considering the psychiatric reports and evaluating the evidence, made the following comments: ". . . She [Mrs. Lovitz] can work at full bore even by Dr. Hoyer's evaluation.[3] . . . [¶] But, I can not charge her with accomplishing that immediately. [¶] So, for that reason, I have continued support for the time—I have for three years from April 1, at which time it shall terminate. [¶] . . . I find that there is no issue . . . about ability to pay, nor do I find there is an issue about need—yes, you do need the money, but I think that you also need to face the reality of fighting with what you have as a problem and overcoming it, and I'm quite sure you will be able to."

Two principal issues are raised on appeal.[4]

1. Was the order modifying and terminating spousal support (after three years) final, thus depriving the court of further jurisdiction on this issue; or, alternatively, is the trial court's order still modifiable pursuant to Civil Code section 4801, subdivision (d)?[5]

"Prior to passage of the Family Law Act, trial courts had ongoing jurisdiction to modify awards of spousal support. Now subdivision (d) of section 4801 of the Civil Code provides for absolute termination of spousal support unless the trial court in its original order retains jurisdiction to extend an order for support. ■ The new law thus affords the trial court the discretion to determine if support should be absolutely terminated after a period of time. In this way, the court can settle the rights of the parties at one time and to some extent curtail endless modification proceedings." (*In re Marriage of Patrino,* 36 Cal.App.3d 186, 189 [111 Cal.Rptr. 367].) In our present case, the court, in its original order, retained jurisdiction to modify spousal support; therefore, the issue is whether a subsequent order can deprive the court of further jurisdiction by terminating spousal support immediately or at a later specified date or occurrence. Section 4801, subdivision (d), is identical with its predecessor, Civil Code section 139.7.[6] In *Maben* v. *Superior Court,* 255 Cal.App.2d 708 [63 Cal.Rptr. 439], the trial court

---

[3]This statement is, of course, inaccurate (see fn. 2).

[4]Wife also claimed on appeal that the court erred in modifying the award because no change of circumstances were proved. We disagree; there was ample evidence that the circumstances surrounding both parties had changed.

[5]This issue was first raised by counsel at oral argument before this court. Further time was granted to counsel in order for them to respond to the problem in writing.

[6]Civil Code section 4801, subdivision (d) provides: "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction."

modified a prior support order as follows: " 'Defendant is ordered to pay plaintiff for her support and maintenance for 12 months $250.00 a month commencing January 1, 1966, and continuing for 11 months thereafter at which time alimony shall terminate.' " (*Id.,* at 710.) Defendant fully complied with the provisions of that order. On January 13, 1967, plaintiff obtained an order requiring defendant to show cause why he should not be required to pay plaintiff $600 per month as alimony in the future. Defendant moved to dismiss that order to show cause on the ground that the court no longer had any power or jurisdiction to grant the relief sought. The court denied the motion to dismiss; defendant then filed his petition for writ of prohibition, which was granted. The court stated: "We are thus required to determine the meaning of the phrase 'original order' as used in section 139.7. In our opinion that phrase refers to the latest order in point of time in which the court has made an allowance for the support of either party. That order may be the interlocutory judgment or, as here, may be an order modifying an earlier order for the payment of alimony under the provisions of section 139 of the Civil Code. As we see it, the Legislature intended to provide that the obligation of one party to pay for the support of the other party pursuant to section 139 shall terminate at the end of the period specified in the latest order and shall not be extended unless the court in that order expressly retains jurisdiction." (*Id.,* at p. 712.)

■ We conclude the rule above should be, and is, the same for section 4801, subdivision (d). Thus, the trial court's order, if allowed to stand, would irrevocably terminate spousal support.

2. Wife argues that a modification of support must be based on facts existing at the time of trial and not on speculation. She cites pertinent portions from the following cases:

In *Engelberg* v. *Engelberg,* 257 Cal.App.2d 821, 825 [65 Cal.Rptr. 269], the court said in footnote 2: " 'But the power to make such orders must be held to be limited to the conditions and circumstances existing at the time they are made. The court cannot then anticipate what may possibly thereafter happen, and provide for the future contingencies. [Citation.]' "

In *In re Marriage of Rosan,* 24 Cal.App.3d 885 [101 Cal.Rptr. 295], the court said at pages 895-896: ". . . the automatic reductions provided for by the trial court were ordered for the dual purposes of encouraging Wife to seek employment and, hopefully, avoiding future modification proceedings. Both are worthy purposes which we are loathe to discourage, but, nevertheless, orders for changes in support to take effect in the

future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations. [Citations.]"

And in *In re Marriage of Dennis,* 35 Cal.App.3d 279 [110 Cal.Rptr. 619], the court said at page 285: "It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by the wife to become wholly or partially self supporting . . . [¶] The court had no real assurance that at the end of the four-year period the wife will be unable to show that in spite of sincere efforts on her part, she cannot support herself adequately. It was not warranted in burning its bridges."

■ Husband argues that the trial court did base its order on facts as they existed at the time of trial in that it accepted and followed Dr. Rickles' recommendations; namely, that wife would probably be cured if she knew her support was being terminated. We disagree. The court's own order rejects this interpretation because it continued her support for three more years in order that she could receive further psychiatric treatments as recommended by Drs. Hoyer and Coskey. The conclusion is obvious: if she needs more treatment now, it is pure speculation as to what her condition might be in three years. Even Dr. Rickles' diagnosis and recommendation would have to be reviewed under the facts existing at that time. The cases cited by wife, *ante,* are very much in point.

It is clear that the trial court tried to solve a difficult problem and acted with the best of intentions. It sought to follow Dr. Rickles' recommendation by impressing on wife her need to become self sufficient, but at the same time agreeing with her that she needed more treatment. We would have had no quarrel with the order had the court retained jurisdiction. Dr. Rickles' recommendation could have been implemented—although, we agree not as forcibly—had her support been reduced to $1 at the end of the three years. Unfortunately, the court's attempted cure, commendable as it might be, was too drastic in that it prevents further treatment to the patient if it's prognosis was wrong.

The order is reversed and remanded for further determination consistent with this opinion.

Kaus, P. J., and Ashby, J., concurred.