[S.F. No. 24672. July 16, 1984.]

In re the Marriage of JOYCE and WILLIAM VOMACKA.
WILLIAM VOMACKA, Appellant, v.
JOYCE VOMACKA, Respondent.

---

**COUNSEL**

Robert Vatuone, J. C. Borgman, Mark J. Eggleston and K. Randy Moore for Appellant.

Hyde & Brewer and R. Kent Brewer for Respondent.

---

**OPINION**

**REYNOSO, J.**—Does a trial court have jurisdiction to extend spousal support payments past a date it has specified as the last opportunity the supported spouse may request such payments? Specifically, we are asked to determine whether the trial court in this case had jurisdiction to modify its interlocutory judgment of dissolution of the parties' marriage to extend spousal support past September 1, 1984, pursuant to the following language of the interlocutory decree: "The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [wife's] right to request spousal support from [husband] shall terminate forever." For the reasons discussed below, we conclude that the trial court did have jurisdiction to extend spousal support beyond the specified date.

I

William and Joyce Vomacka, in a proceeding held on August 24, 1979, and with the advice of counsel, stipulated in open court to the provisions and entry of an interlocutory judgment of dissolution of marriage. The interlocutory decree, filed by the court on October 11, 1979, divided their community property, provided for the custody and support of their children, and awarded spousal support as follows: "[William] shall pay to [Joyce], as and for spousal support, the sum of Two Hundred Seventy-five Dollars ($275.00), . . . commencing September 1, 1979 to continue each month thereafter until further order from the Court, the death of either party, the

remarriage of [Joyce], or August 1, 1982, whichever first occurs. *The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [Joyce's] right to request spousal support from [William] shall terminate forever."* (Italics added.)

On June 29, 1982, Joyce obtained an order to show cause seeking, inter alia, to modify the spousal support provision in the interlocutory decree. William filed a responsive declaration on August 27, 1982, following a July 29, 1982 stipulation of the parties that William would pay Joyce support pending the hearing, retroactive to August 1, 1982. The matter was heard on September 3, 1982, before a second judge who filed his notice of intended decision on October 7, 1982. That notice provided that William would be required to continue paying Joyce spousal support, increased to $600 per month, ". . . until the death of either party, remarriage of [Joyce], or until further order of the court." Since this intended decision would permit Joyce to receive spousal support beyond the date specified as her last opportunity to request such support, the notice of intended decision made the following explanation: "To find from an agreement that there is a termination of spousal support, the Court must find explicit language of such termination. The alleged termination provision herein is not sufficiently explicit to find such termination (purports to terminate respondent's right to ask for additional support; does not address itself explicitly to the termination of support). Thus, the Court finds that there is no absolute termination herein on September 1, 1984. (See *In re the Marriage of Moore* (1980) 113 Cal.App.3d 22.)"

On March 3, 1983, the trial court issued its order modifying spousal support and other provisions of the interlocutory decree. William appeals from that portion of the order which states: "That paragraph 2 of the Interlocutory Judgment of Dissolution of Marriage is modified to state: [¶] [William] shall pay to [Joyce], as and for spousal support, the sum of Six Hundred Dollars ($600.00) per month, . . . and, pursuant to the stipulation filed July 27, 1982, commencing August 1, 1982. *Said support shall continue until the death of either party, remarriage of [Joyce], or until further order of the Court."* (Italics added.)

## II

William contends that the trial court exceeded its jurisdiction in modifying the interlocutory judgment to extend spousal support payments beyond September 1, 1984. He argues that this decision was contrary to the parties' agreement and, therefore, in violation of Civil Code section 4811, subdivision (b)[1], which permits the parties to agree that the provisions of

---

[1]All further statutory references are to the Civil Code.

any agreement or order for the support of either party shall not be subject to subsequent modification or revocation by court order. To uphold the trial court's modification order, William asserts, would frustrate the policy of the law favoring settlements and would generate the uncertainty for which section 4801, subdivision (d), discussed below, was enacted to prevent. Since the trial court was without jurisdiction over the subject matter of spousal support after September 1, 1984, William continues, its decision extending support past that date violated constitutional due process standards. William also argues that the trial court's reliance on *In re Marriage of Moore* (1980) 113 Cal.App.3d 22 [169 Cal.Rptr. 619], is misplaced.

Joyce responds that the interlocutory decree permitted an extension of spousal support beyond September 1, 1984, if requested before that date, and is consistent with the parties' desire to see if Joyce could become self-supporting. She argues that where, as here, an order regarding the period of time for which a court can extend spousal support is vague, it is to be construed in favor of the fundamental jurisdiction of the court to act. She therefore asserts that the modification order properly extends her support beyond September 1, 1984, since she made a timely request for such modification pursuant to the interlocutory decree.

William's first argument that the trial court's modification order is contrary to the parties' agreement, is based in part on his assertion that the language of the interlocutory decree evidences a clear intent of the parties that both the court's jurisdiction to extend spousal support, and Joyce's right to request such support, terminate absolutely on September 1, 1984. He maintains that the concluding clause of the original decree's jurisdictional provision—"at which time respondent's right to request spousal support from petitioner shall terminate forever"—merely states an obvious consequence of terminating the trial court's jurisdiction on September 1, 1984. William claims that by construing the interlocutory decree to permit the court to extend spousal support beyond September 1, 1984, the trial court impermissibly departed from the plain meaning of the parties' stipulated agreement and inserted a term not found therein (citing *Apra* v. *Aureguy* (1961) 55 Cal.2d 827, 830 [13 Cal.Rptr. 177, 361 P.2d 897] [pronouncing general rule that "'courts are not empowered under the guise of construction or explanation to depart from the plain meaning of the writing and insert a term or limitation not found therein.'" (Citation omitted.)]) He relies on the well-established legal principle that "'in the absence of fraud or mistake, the intention of the parties as expressed in the agreement is controlling'" (*ibid.*), and on "the law's general policy favoring settlements" (*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313, 325 [72 Cal.Rptr. 146]), particularly property and family settlements (*Adams* v. *Adams* (1947) 29 Cal.2d 621, 624 [177 P.2d 265]; *McClure* v. *McClure*

(1893) 100 Cal. 339, 343 [34 P. 822]). As discussed below, William's argument is not supported by the record.

■ In lieu of a court award of spousal support, a property settlement agreement providing for such support may be entered into by a husband and wife. Such agreements are favored, subject to the scrutiny and approval of the court and, if approved, will be incorporated into the interlocutory judgment. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 189, p. 5057.) Section 4811, subdivision (b) provides in pertinent part that such court-approved spousal support agreements are subject to subsequent modification by court order "except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, *specifically provides to the contrary.*" (Italics added.)[2]

■ Essentially, it is William's position that the modification order impermissibly modified the parties' written spousal support agreement as set

---

[2]Prior to the 1967 amendment to former section 139 (Stats. 1967, ch. 133, § 2, p. 1165), now section 4811, subdivision (b) (Stats. 1969, ch. 1608, § 8, p. 3336, as amended), the determination whether a marital property agreement was modifiable depended on the nature of the agreement. (6 Witkin, *supra,* §§ 196-198, pp. 5065-5070; *see* also *id.* (1982 supp.) pp. 559-560.) If the agreement was an "integrated" or nonseverable property settlement agreement, in which the parties expressed their intention to reach a final division of their property, it was not subject to modification unless the agreement so provided or the parties consented. (See, e.g., *Dexter* v. *Dexter* (1954) 42 Cal.2d 36 [265 P.2d 873]; *Plumer* v. *Plumer* (1957) 48 Cal.2d 820 [313 P.2d 549].) To do otherwise would have been contrary to the express intention of the parties. (*Dexter* v. *Dexter, supra,* 42 Cal.2d at p. 41.)

An agreement was conclusively deemed integrated if it had the following characteristics: "An agreement providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement, will be deemed conclusive evidence that the parties intended an integrated agreement. [Citations omitted.]" (*Plumer* v. *Plumer, supra,* 48 Cal.2d at p. 825.) In the absence of one or more of these characteristic provisions, or where the agreement was ambiguous, extrinsic evidence could be admitted to show that the parties intended an integrated agreement. (*Ibid.*) If the agreement was not integrated, but "severable," the trial court had jurisdiction to modify its provisions. (*Id.,* at p. 824.)

The 1967 amendment to former section 139 eliminated the necessity of the trial court to examine each agreement to determine if it was integrated. As set forth in present section 4811, subdivision (b), the statute provides that "[t]he provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property" and, as discussed *ante,* authorizes modification of the spousal support provisions except to the extent that the parties have agreed to the contrary.

The statute also eliminated the prior distinction between agreements which were submitted to the court for approval to (1) have their validity established in order to become res judicata in any subsequent action, or (2) merge the agreement in the judgment, that is, to supersede the contractual obligation by order of the court. (6 Witkin, *supra,* § 192, p. 5061.) In this regard, the statute provides that "[a]ll orders for the support of either party based on such agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make such orders."

forth in the interlocutory decree, as well as their oral agreement entered into in open court that the court's jurisdiction regarding spousal support terminate absolutely on September 1, 1984. However, as the trial court properly concluded, apparently in light of section 4811, subdivision (b), "to find from an agreement that there is a termination of spousal support, the Court must find explicit language of such termination. The alleged termination provision herein is not sufficiently explicit to find such termination . . . ." (See *In re Marriage of Hufford* (1984) 152 Cal.App.3d 825, 834-835 [199 Cal.Rptr. 726].) Contrary to William's assertions, the modification order may be viewed consistently with the language of the decree, and William has proffered no evidence to negate this consistency.[3] Moreover, the record on appeal does not contain a transcript of the trial court proceedings, presumably waived by the parties, and therefore contains no reference to the oral statements of the parties during any of the dissolution proceedings. (Cf. *In re Marriage of Wright* (1976) 54 Cal.App.3d 1115 [126 Cal.Rptr. 894] [holding that § 4811, subd. (b) precludes the admission of extrinsic evidence of the parties' intent that their spousal support agreement be nonmodifiable, in the absence of a written agreement to that effect or an oral agreement entered into in open court].)

As there is no evidence of a written or oral agreement of the parties prohibiting modification of the interlocutory decree, we reject William's argument that the subject order violates the limitation on judicial modifications set forth in section 4811, subdivision (b). William's reliance on *Vasquez* v. *Vasquez* (1952) 109 Cal.App.2d 280, 285 [240 P.2d 319] for the principle that a trial court's actions are void when they exceed the court's powers as defined by express statutory declaration, is therefore unfounded. Nor do we accept William's view that the instant case comes within the holding of *In re Marriage of Nicolaides* (1974) 39 Cal.App.3d 192 [114 Cal.Rptr. 56], in which the Court of Appeal reversed the trial court's order denying wife's motion to conform the interlocutory and final judgments of dissolution to the terms of the parties' marital property settlement agree-

---

[3]We do not find persuasive the fact that the stipulated interlocutory judgment unambiguously reserved jurisdiction over two other matters, for in neither had there been an original allocation of the asset. The explicit wording of reserved jurisdiction in these matters was thus easily and routinely phrased.

Jurisdiction over these matters was reserved as follows: (1) "The court reserves jurisdiction over [the family residence] to make any further orders necessary to carry out this order." The order to which this provision refers was a sale of the residence which permitted either party to purchase the interest of the other or, if both parties sought to purchase the other's interest, an auction. No preliminary allocation was provided.

(2) "The court shall retain jurisdiction over [William's] pension plan with P.G.& E. per *In re Marriage of Brown*." *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] provides that an unvested pension right is a community asset. Since William's pension had apparently not yet matured, the agreement put off for a later determination what the precise interests were to be.

ment. The parties' agreement in *Nicolaides,* unlike that in the instant case, was intended to be integrated (see fn. 2, *ante*) and expressly precluded subsequent modification except under circumstances which the parties had not satisfied.

### III

We turn to the question whether, assuming no agreement of the parties to the contrary, the trial court had jurisdiction to extend spousal support beyond September 1, 1984. William asserts that the court's jurisdiction terminates absolutely on that date. He argues that jurisdiction to extend support must be expressly retained by the trial court pursuant to section 4801, subdivision (d) and that the trial court in the instant case did not meet this prerequisite. Joyce responds that whether the trial court could extend spousal support beyond September 1, 1984, is not clearly answered by the language of the order. She claims, nonetheless, that where an order regarding the period of time for which a court can extend support is vague or ambiguous, it is to be construed in favor of the fundamental jurisdiction of the court to act. She also claims that spousal support is a right incidental to marriage, the curtailment of which is subject to strict interpretation. As will appear, we agree with Joyce.

Section 4801, subdivision (d) provides that "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction."[4] This provision recodified in exact language former section 139.7 which, as we discussed at length in *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41], was enacted to insure notice to the parties of a marital dissolution whether, and for what period of time, a court retains jurisdiction to make subsequent orders extending spousal support. (*Id.,* at p. 447.)

Prior to the enactment of former section 139.7 in 1965,[5] a trial court retained jurisdiction to extend the duration of spousal support at any time

---

[4]The provision's reference to the "original order" has been interpreted to mean "the latest order in point of time in which the court has made an allowance for the support of either party." (*Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 712 [63 Cal.Rptr. 439] [interpreting former § 139.7]; *In re Marriage of Keeva* (1977) 66 Cal.App.3d 512, 517 [136 Cal.Rptr. 82]; *Lovitz* v. *Lovitz* (1976) 65 Cal.App.3d 299, 303-304 [135 Cal.Rptr. 9].) Application of this rule to the instant case merely confirms the necessity of examining the language of the original interlocutory decree.

[5]Former section 139.7 (Stats. 1965, ch. 1109, § 1, p. 2755) was originally recodified as former section 4801, subdivision (e) with the adoption of the Family Law Act in 1969 (Stats. 1969, ch. 1608, § 8, p. 3334) and renumbered to subdivision (d) in 1971 (Stats. 1971, ch. 1675, § 3, p. 3603). (*In re Marriage of Morrison, supra,* at p. 449, fn. 8.)

during the payment period, and it was not necessary to so state in the court's order. However, the court had no jurisdiction to grant relief after the specified payment period unless it expressly reserved such jurisdiction in its order. (*In re Marriage of Morrison, supra,* 20 Cal.3d 437, 445.) The Legislature intended that former section 139.7 would help eliminate the confusion and frustrations, and subsequent litigation, which previously arose when either spouse belatedly learned that while an order indicated on its face that support payments were to be paid only until a specified date, those payments could be extended indefinitely pursuant to an application for extension filed prior to the specified date. (*Id.* at p. 447, fn. 6.) It was hoped that the enactment of former section 139.7 would eliminate these misunderstandings by requiring the trial court to "expressly indicate in its order if it wished to retain jurisdiction" to make future extension orders. (*Id.,* at p. 446.) ■ Thus, the purposes of present section 4801, subdivision (d) are to put the supporting spouse on notice that the court has jurisdiction to extend the spousal support payments (*id.,* at p. 446), and to inform the supported spouse of the time within which he or she must petition for additional relief (*id.,* at p. 447).

We recognize that these goals are most effectively met when the court's order retaining jurisdiction is stated as explicitly as possible and we encourage trial courts to strive for this clarity. ■ Nonetheless, where an order is not explicit but a retention of jurisdiction may reasonably be implied, several policy reasons favor such an interpretation.

■ First, orders providing for absolute termination of spousal support on a specified date are disfavored and will be overturned as an abuse of discretion "unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. . . . If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction. [Citation.]"[6] (*In re Marriage of Morrison, supra,* at p. 453.) This rule is particularly applicable to lengthy marriages. (*Ibid.*)

---

[6]Section 4801, subdivision (a) (amended after the *Morrison* trial court entered its interlocutory judgment (*Morrison, supra,* at p. 442, fn. 3)) sets forth several factors to be considered by the court in determining the amount and duration of spousal support. These are: "(1) The earning capacity of each spouse . . . . [¶] (2) The needs of each party. [¶] (3) The obligations and assets, including separate property, of each. [¶] (4) The duration of the marriage. [¶] (5) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (6) The time required for the supported spouse to acquire appropriate education, training, and employment. [¶] (7) The age and health of the parties. [¶] (8) The standard of living of the parties. [¶] (9) Any other factors which it deems just and equitable."

In *Morrison,* we held that it was an abuse of discretion for the trial court to divest itself of jurisdiction over spousal support after 11 years "without any evidence in the record that the wife would be able to provide for herself at that time." (*Id.* at p. 454.)[7] In that case, we followed the reasoning of a line of cases (*id.,* at p. 443) exemplified by *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885 [101 Cal.Rptr. 295] and *In re Marriage of Dennis* (1973) 35 Cal.App.3d 279 [110 Cal.Rptr. 619],[8] holding that a trial court should, as a general rule, reserve jurisdiction to extend spousal support where the marriage has been a lengthy one, and that the party seeking to terminate jurisdiction has the burden of showing that the financial needs of the supported spouse will be satisfactorily met at the date proposed for such termination. (*Id.* at pp. 443, 452-453.) At the same time, we disapproved another line of cases, exemplified by *In re Marriage of Patrino* (1973) 36 Cal.App.3d 186 [111 Cal.Rptr. 367] and *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58], permitting a trial court to terminate jurisdiction over spousal support after a lengthy marriage even though there has been no showing that the supported spouse will be self-supporting at the time selected for termination of jurisdiction. (*Id.* at p. 453.)

Although the record in the present case does not indicate the duration of the parties' marriage, their children were aged 10 and 7 when the interlocutory judgment was rendered. Assuming the parties were married for a minimum of 11 years, their marriage was of sufficient length to bring them within the considerations of self-support discussed in *Morrison.* This factor precluded an absolute termination of support without a determination that Joyce could adequately meet her financial needs. Moreover, William,

---

[7]The subject order in *Morrison* provided in relevant part that wife receive spousal support in the amount of $400 a month " 'for a period of eight years, thereafter jurisdiction shall be reserved for three years, thereafter spousal support is to terminate absolutely.' . . ." (20 Cal.3d at p. 441.)

[8]In *In re Marriage of Rosan, supra,* 24 Cal.App.3d 885, the Court of Appeal held that it was an abuse of discretion for the trial court to provide for automatic termination of all spousal support at the end of 3 years, following a marriage of 17 years. While the court noted that the presumed goals of such automatic terminations—to encourage the supported spouse to seek employment and avoid future modification proceedings—are worthy, it held that "nevertheless, orders for changes in support to take effect in the future must be based upon reasonable inferences to be drawn from the evidence, not mere hopes or speculative expectations. [Citations.]" (*Id.,* at p. 896.)

In *In re Marriage of Dennis, supra,* 35 Cal.App.3d 279, involving a marriage of 25 years, the Court of Appeal found that it was an abuse of discretion for the trial court to order automatic termination of jurisdiction after 4 years. The court stated: "It is possible that difficulties not contemplated at this time will frustrate even a good faith attempt by the wife to become wholly or partially self-supporting. *Rosan* . . . certainly indicates that after a lengthy marriage a retention of jurisdiction to modify spousal support should be the norm and that the burden of justification is on the party seeking termination. [¶] That burden is not met here. The court had no real assurance that at the end of the four-year period the wife will be unable to show that in spite of sincere efforts on her part, she cannot support herself adequately. It was not warranted in burning its bridges." (*Id.,* at p. 285.)

as the spouse seeking termination of the spousal support, has not met his burden of proving that Joyce will be self-supporting as of September 1, 1984. (*Id.,* at p. 443.)

■ The policy against absolute termination of spousal support is effected by a second policy, as set forth in *In re Marriage of Moore, supra,* 113 Cal.App.3d 22, 28, that where there is an ambiguity in the language of a marital property agreement it must be decided in favor of the right to spousal support. William argues that the trial court's reliance on *Moore* is misplaced and asserts that the case sets precedent for concluding that Joyce waived any claim to spousal support after September 1, 1984.

In *Moore,* as in the present case, the parties entered into a stipulated separation agreement which was incorporated into their interlocutory judgment of dissolution of marriage. The agreement provided in relevant part that husband would pay spousal support to wife for a period of two years. The agreement made no statement regarding retention of jurisdiction to extend the support. The Court of Appeal refused to find a waiver of wife's right to future support in the absence of any express reference to an agreement not to extend the period of such support. (*Id.,* at p. 28.) In accordance with well established legal principles pertaining to waiver, it held that the trial court abused its discretion in finding wife knowingly waived her right to support. The court stated: "Waiver requires a voluntary act, knowingly done, with sufficient awareness of the relevant circumstances and likely consequences. [Citation.] There must be actual or constructive knowledge of the existence of the right to which the person is entitled. [Citation.] (2) The burden is on the party claiming a waiver to prove it by evidence that does not leave the matter doubtful or uncertain and the burden must be satisfied by clear and convincing evidence that does not leave the matter to speculation. [Citation.] This rule particularly applies to cases involving a right favored in law such as, in this case, the right to retain lawful property entitlements and support." (*Id.,* 113 Cal.App.3d at p. 27.)

Referring to an opinion of this court (*City of Ukiah* v. *Fones* (1966) 64 Cal.2d 104, 109-110 [48 Cal.Rptr. 865, 410 P.2d 369]) in which we quoted with approval the language of Justice Spence in *Estate of Coffin* (1937) 22 Cal.App.2d 469, 471 [71 P.2d 295], the *Moore* court further noted that " '[i]t is well settled that the right to a family allowance is strongly favored in our law and that it will not be held to have been waived or relinquished except where the language relied upon clearly and explicitly manifests that intention. [Citations.] . . . "[A]ny uncertainty in the language of the agreement will be resolved in favor of the right." [Citation.]' " (*In re Marriage of Moore, supra,* 113 Cal.App.3d at p. 28.) The *Moore* court further held

that the trial court abused its discretion in alternatively concluding that wife was capable of sufficiently providing for her own needs.

■ Although many of the facts in *Moore* are distinguishable from the instant case—in *Moore,* neither party was represented by counsel and the wife had an inadequate command of English—William has not met his burden of showing that Joyce waived any rights to support after September 1, 1984. We thus reject Williams' assertion that the trial court's reliance on *Moore* was misplaced, since this reliance properly effected the *Moore* policy that any ambiguity in an agreement between the parties be interpreted to favor the right to spousal support.

■ A third policy favoring modification of the instant decree to permit an extension of spousal support beyond September 1, 1984, is that language in a spousal support order suggesting that modification of its terms will be permitted is routinely interpreted as a retention of the court's fundamental jurisdiction to modify and, upon a proper factual showing, to extend the spousal support provisions contained therein.

■ In the instant case, the parties' interlocutory decree provided for its future modification not only by permitting until September 1, 1984, for Joyce to request support payments but also by stating that spousal support payments would continue *"until further order from the Court,* the death of either party, the remarriage of respondent, or August 1, 1982, whichever first occurs.*"* (Italics added.) It was pursuant to the first portion of this clause that Joyce properly sought modification of the decree on June 29, 1982.[9] The interpretation of this language to permit modification of the parties' interlocutory decree extending spousal support payments beyond September 1, 1984, is supported by *In re Marriage of Keeva, supra,* 66 Cal.App.3d 512. In that case, husband obtained a modification of the parties' interlocutory decree reducing his spousal and child support payments. Such payments were made payable through November 15, 1975, the date to which the matter was continued.[10] By subsequent orders of the court, hearing was further continued until November 19, 1975, and then to December 10, 1975. On December 10, husband challenged the jurisdiction of

---

[9]Had Joyce not sought modification of the interlocutory decree before August 1, 1982, her spousal support payments would have ceased on that date. However, she nonetheless could have sought modification of the decree to provide for a new spousal support award, rather than an extension of the original award, pursuant to the language of the decree retaining jurisdiction to hear Joyce's requests for spousal support until September 1, 1984.

[10]The modification order provided in relevant part: " 'The respondent is ordered to pay directly to petitioner . . . by way of spousal support $15.00 per week . . . continuing through Saturday 15th of November 1975 . . . Matter ordered continued to November 15, 1975 . . . .' " (*In re Marriage of Keeva, supra,* 66 Cal.App.3d at pp. 515-516, italics omitted.)

the court to continue granting spousal support. He argued that the modification order terminated the allowance for spousal support on November 15th, and that the court did not explicitly retain jurisdiction as required by section 4801, subdivision (d).

The trial court rejected this challenge and awarded a continuation of support. The Court of Appeal affirmed. Looking to the circumstances under which the modification order was made, specifically that husband had been terminated from his job, the court found that "[t]he manifest purpose of the extension was to cover the situation until husband's earning capacity improved. [¶] . . . [T]he simultaneous continuance of the matter to November 15, 1975, manifested the court's intent to deal further with the matter in light of husband's earning capacity at that time and was inconsistent with an intent that support terminate at such time." (*Id.,* at p. 518.) The court further reasoned that "[t]he continuance to November 19 implies that there would be something to rule upon on that date. If the effect of the court's failure to act on November 15 were loss of jurisdiction, the November 19 setting was a nullity. It is thus apparent that although the court did not use the words that it 'retains jurisdiction,' there was no intent to limit the duration of the period of payment for support." (*Ibid.*)

Although in the instant case, the record does not indicate what circumstances influenced the trial court's modification order providing for an indefinite extension of spousal support payments, counsel for petitioner informed us at oral argument that the payments were initially structured with a "jurisdictional step-down to zero payment" to provide an incentive to petitioner to become self-sufficient. In the event petitioner failed to attain this goal, however, the court reserved jurisdiction to make further support awards. As in *Keeva,* the instant trial court's retention of jurisdiction until September 1, 1984, to hear Joyce's requests for spousal support implies that the court retained the power to grant such requests. If the court was without jurisdiction to award spousal support past September 1, 1984, its retention of jurisdiction until that date to hear Joyce's requests for support would be meaningless. (See also *Dahlstet* v. *Dahlstet* (1969) 272 Cal.App.2d 174, 180 [77 Cal.Rptr. 45], and *Lassiter* v. *Lassiter* (1967) 256 Cal.App.2d 81, 82 [63 Cal.Rptr. 676].) Accordingly, the court's retention of jurisdiction until September 1, 1984, to modify the spousal support provisions of the interlocutory decree necessarily included a retention of its fundamental jurisdiction to extend spousal support payments beyond that date.

Both parties rely on *In re Maxfield* (1983) 142 Cal.App.3d 755 [191 Cal.Rptr. 267] to support their respective positions. In *Maxfield,* the trial court rendered an interlocutory judgment of dissolution of the parties' marriage, stating in pertinent part that "jurisdiction to award spousal support

is reserved for a period of two years commencing July 15, 1976." (*Id.*, at p. 760.) Pursuant to a stipulation executed by the parties and their attorney, the court modified the interlocutory judgment on July 11, 1978, to permit spousal support payments to continue past July 15, 1978. Husband complied with the support provisions of the modification until December 1979 when he informed wife that he considered the modification void and nonbinding. He asserted that under the original interlocutory judgment the court divested itself of jurisdiction after two years and thus lacked jurisdiction to extend spousal support past the two-year period. Wife sought a contempt sanction to enforce the decree as modified. After hearing testimony, the trial court terminated the contempt hearing and vacated the order of modification on the ground that the order was entered in reliance upon the parties' stipulation and not upon a showing of changed circumstances, which is ordinarily a prerequisite for a modification of spousal support. (*Id.*, at p. 759.)

The Court of Appeal reversed, holding that the stipulated modification was res judicata and could not be collaterally attacked.[11] The court stated in dictum that even if collateral attack were permitted, the trial court did not exceed its jurisdiction when it extended spousal support beyond July 15, 1978. The court stated that "[t]he 1976 decree . . . did not provide that all spousal support obligations 'terminate absolutely' upon a certain date [citation]; instead, it reserved 'jurisdiction to award spousal support' until July 15, 1978. The court thereby provided that its authority to take new judicial action concerning spousal support would expire on that date. It did not purport to limit the nature of relief it could grant provided it acted within that jurisdictional period." (*Id.*, at pp. 762-763.)

Although William acknowledges that *Maxfield* and the instant case address an identical issue, namely, whether the trial court reserved jurisdiction to extend spousal support beyond the last date it was permitted to act, William seeks to distinguish *Maxfield* on two grounds. First, William argues that the *Maxfield* court's conclusion that the trial court had jurisdiction to extend spousal support beyond the specified date was based on the meaning of "award." This argument is without merit. The *Maxfield* court interpreted

---

[11]The *Maxfield* court concluded that a finding of changed circumstances need not be made where the parties, with the advice of counsel, have stipulated to the terms of the modification. The stipulated modification thus became res judicata when no party appealed or made a timely motion to set it aside. The court further noted that the claimed error did not render the order void since the defect, if any, "is merely a nonjurisdictional mistake of law and the order remains immune from collateral attack." (142 Cal.App.3d at p. 759.)

The *Maxfield* court then rejected husband's alternative contention that it should affirm the order vacating the modification because the trial court lacked jurisdiction to extend spousal support beyond July 15, 1978. The Court of Appeal concluded that husband was barred from collaterally attacking the 1978 modification on the ground that the trial court had fundamental jurisdiction over the parties and subject matter and because wife had detrimentally relied upon the validity and finality of the stipulated modification.

the word "award," as used in the interlocutory judgment, to "include[] the concept of extension of support. A court 'awards' spousal support through a discrete judicial act; the 'award' is consummated upon the entry of the order or judgment although the obligations and entitlements established in that order may continue for a substantial period thereafter." (*Id.*, at p. 763.) This interpretation of "jurisdiction to award spousal support" is properly juxtaposed with the instant interlocutory decree's retention of "jurisdiction regarding spousal support" and is virtually identical to Joyce's "right to request spousal support." In both *Maxfield* and the instant case, wife was already receiving support at the time these orders were modified. Thus, the language of the instant interlocutory decree, like the *Maxfield* retention of "jurisdiction to award spousal support," necessarily "includes the concept of extension of support." (*Id.*, at p. 763.) This power resides in the fundamental jurisdiction of the court, which includes personal jurisdiction over the parties and subject matter jurisdiction over spousal support. (*Id.*, at p. 761.)

The second distinction William seeks to make is that *Maxfield* makes mandatory its admonition that "[i]t is preferable that a reservation of jurisdiction unambiguously indicate that the authority to extend support beyond the period originally provided is among the powers retained. (See *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352 [164 Cal.Rptr. 381].)" (*Id.*, at p. 763.) However, as previously discussed, this clearly stated preference for clarity does not preclude interpreting an ambiguous spousal support order to permit an extension of such support. Contrary to William's assertions, this policy was recognized by the *Maxfield* court in its reference to *Richmond* as an example of preferable, not mandatory, draftsmanship.[12]

[12]The additional case law relied upon by William is inapposite. *Faught v. Faught* (1973) 30 Cal.App.3d 875 [106 Cal.Rptr. 751] merely reiterates the rule set forth in section 4801 subdivision (d), that a court lacks authority to extend the period of spousal support if its original order did not expressly retain such jurisdiction. However, the case is unhelpful in interpreting or applying that rule because the opinion does not set forth the wording of the separate maintenance decree. *Faught* only sets forth the conclusion of the Court of Appeal that "[t]he decree did not retain jurisdiction in the court to extend the period of spousal support." (*Id.*, at p. 878.)

*Maben v. Superior Court, supra,* 255 Cal.App.2d 708, also cited by William for the rule that an express reservation of jurisdiction over spousal support is a condition of the court's continuing jurisdiction, is factually distinguishable from the instant case. In *Maben,* the second modification of the original spousal support award (that is, the latest spousal support order [see fn. 4, *ante*]) was made after the enactment of former section 139.7 and provided in pertinent part that spousal support should "continu[e] for 11 months thereafter at which time alimony shall terminate." (*Id.*, at p. 710.) Unlike the instant case, the request for extension of spousal support was properly denied because brought after the expiration of this 11-month period, that is, after the court's jurisdiction had clearly ceased.

*Lovitz v. Lovitz, supra,* 65 Cal.App.3d 299, is even more inapposite. The Court of Appeal in *Lovitz* held that the trial court order providing for absolute termination of spousal support upon a specified date could not be upheld in light of the judicial policy encouraging trial courts' retention of jurisdiction over spousal support until it is clearly evident that the supported spouse is presently able to assume his or her own support.

In conclusion, where jurisdiction to award, or grant requests for, spousal support is reserved until a specified date the court has fundamental jurisdiction until that date to take new action concerning such support. Such new judicial action may include an extension of spousal support beyond the last date the court can act. We thus reject William's final contention that the trial court did not retain jurisdiction over the subject matter of spousal support past September 1, 1984, hence its extension of such support past that date violated constitutional due process standards.

## IV

We must analyze the language of the instant interlocutory decree in accordance with the policies herein discussed: disfavoring the absolute termination of spousal support without a determination that the supported spouse can become self-supporting; interpreting ambiguous spousal support agreements and orders in favor of support; and the fundamental jurisdiction of trial courts to modify existing spousal support orders to extend support payments past the last date they can act. These policies dictate the following interpretation of the instant interlocutory decree: The trial court retained jurisdiction until September 1, 1984, to hear requests by Joyce that the court award or extend her spousal support. Failing such request, the court's jurisdiction to award or extend such spousal support would terminate on that date. However, since Joyce requested an extension of her support before the September 1, 1984, deadline, the court had fundamental jurisdiction to grant her request and such jurisdiction permitted an extension of Joyce's support beyond September 1, 1984.

As the trial court had jurisdiction to modify its interlocutory judgment of dissolution of the parties' marriage to extend spousal support beyond September 1, 1984, we affirm the trial court's modification order.

Bird, C. J., Kaus, J., Grodin, J., and Agretelis, J.,* concurred.

**MOSK, J.**—I dissent.

By looking at the clause involved here in isolation, one could by a strained interpretation of a perceived ambiguity reach the conclusion urged by the wife and accepted by the majority.

However, if one examines the entire written agreement, the apparent intent of the parties assumes a different dimension. With respect to the sale of the family residence, the agreement provides: "[t]he court reserves ju-

---

*Assigned by the Chairperson of the Judicial Council.

risdiction over this asset to make any further orders necessary to carry out this order." No time limitation. With respect to husband's retirement, it provides: "[t]he court shall retain jurisdiction over [husband's] pension plan with P.G. & E. per *In re Brown*." No time limitation. The only temporal specification is in the alimony clause.

Had the parties intended the court to retain jurisdiction to award spousal support to continue beyond the prescribed date limitation of September 1, 1984, it would have been a simple matter to employ language similar to that used in connection with the family residence and husband's pension. That it was not done strongly suggests a different intent.

The decree did not retain jurisdiction in the court to extend the period of spousal support, and under the statute (Civ. Code, § 4801, subd. (d)) the court lacked authority to grant wife's request. (*Faught* v. *Faught* (1973) 30 Cal.App.3d 875, 878 [106 Cal.Rptr. 751].) I conclude, as did a unanimous Court of Appeal, that where as here the written agreement signed by the parties and their counsel and stipulated to in open court did not expressly reserve jurisdiction to award spousal support that would extend beyond September 1, 1984, the trial court erred in purporting to modify the interlocutory judgment to provide such support. The modification is particularly egregious in that the support order is now completely unlimited as to time, subject only to the death of either party, the remarriage of the wife, or further order of the court. (*Lovitz* v. *Lovitz* (1976) 65 Cal.App.3d 299, 303 [135 Cal.Rptr. 9]; *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 712 [63 Cal.Rptr. 439].)

I would reverse the order.

Broussard, J., concurred.