[No. B009687. Second Dist., Div. Three. Feb. 25, 1986.]

In re the Marriage of KAREN J. and ALVIN G. SEGEL.
KAREN J. SEGEL, Appellant, v.
ALVIN G. SEGEL, Respondent.

COUNSEL

Trope & Trope and William B. Anderson for Appellant.

Irell & Manella, Peter J. Gregora and Sharon Lybeck Hartmann for Respondent.

OPINION

LUI, J.—The question presented in this appeal is whether the trial court had jurisdiction to modify a support order after the date specified in said order for termination of support when the supporting spouse has fully complied with the terms of the order, which was based upon a stipulated agreement between the parties. We hold that the trial court lost jurisdiction to modify the support arrangement and affirm the trial court's order denying further spousal support.

### PROCEDURAL AND FACTUAL BACKGROUND

Karen Segel (appellant) and Alvin Segel (respondent) were married in June 1968 and separated in November 1975. The marriage was dissolved in June 1976. There is one child of the marriage, a son, born in April 1975.

On November 6, 1975, appellant and respondent executed a detailed marital settlement agreement (the 1975 agreement) which provided, among oth-

er things, that appellant would have physical custody of their son, Adam. The financial responsibility for the support of the son was to be divided equally between the parties. The 1975 agreement further provided that respondent would pay appellant one-half of his annual gross earned income as spousal support until her death or remarriage, whichever event should first occur. This sum was subject to an offset of 50 percent of appellant's gross income in any month in which she was employed. An interlocutory decree of dissolution that incorporated the terms of the 1975 agreement was entered on June 21, 1976.

Thirteen months after the 1975 agreement took effect, the parties appeared in court to modify it. On March 21, 1977, appellant and respondent appeared before Commissioner John Alexander, and appellant's attorney read into the record a previously negotiated stipulation which "deleted" and replaced certain paragraphs of the 1976 interlocutory judgment. The stipulated modifications were as follows: (1) the physical custody of Adam, then approximately two years old, was modified to award such custody to respondent who also agreed to provide all of the son's support; (2) the spousal support was amended to provide for a nonmodifiable spousal support award of $60,000 to appellant, payable $500 on the 1st and 15th day of each month, commencing April 1, 1977, until the death, remarriage or the passage of a five-year period, whichever of these three events shall first occur.

During the course of the hearing on the motion modifying the June 21, 1976, interlocutory judgment of dissolution, Commissioner John Alexander and the attorneys discussed the stipulation in detail and in the presence of the parties.[1]

---

[1]After counsel for appellant stated the essence of the stipulated agreement of the parties regarding the modification, respondent's attorney, appellant's attorney and the court had the following discussion:

"MR. WASSER [respondent's attorney]: The five-year period is from April 1, 1977. As soon as those three occurrences, Your Honor.

"MR. DANIEL [appellant's attorney]: The earliest of those three occurrences, Your Honor.

"THE COURT: Subject to these contingencies, I take it this is to be unintegrated in the domestic sense?

"MR. WASSER: No. It is not intended to be integrated from the domestic. It is intended to be deducted by the respondent and taxable by the [appellant].

"THE COURT: *But still nonmodifiable?*

"MR. WASSER: *Absolutely.*

"THE COURT: The court associates integrated in the domestic sense with nonmodifiability. If you make a distinction, otherwise let's have it clearly understood.

"MR. DANIEL: The court's statement is the understanding of the parties.

"THE COURT: No. My statement seems to have been wrong. Mr. Wasser's statement is the intent of the parties. It is nonintegrated. *It is a court-imposed obligation, but it is not nonmodifiable except for* termination upon death, remarriage or *termination by complete*

Following discussion of other matters, the court stated to appellant and respondent that "you are presumed to understand and accept these stipulations having heard them audibly pronounced in open court."

Subsequently, appellant's attorney filed a proposed order which he drafted, embodying the oral stipulations made on March 21, 1977. This order was signed by the court and provided as follows: "3. [Respondent] is ordered to pay [appellant] as and for non-modifiable spousal support, the sum of $60,000 payable $500 on the 1st and 15th day of each month, commencing April 1, 1977, and continuing until the death or remarriage of [appellant], or the expiration of five years, which ever [sic] shall first occur."

Over the next five years, respondent paid the full amount of $60,000 to appellant, making the last monthly payment in March 1982.

In May 1983, appellant filed an order to show cause seeking spousal support in the amount of 50 percent of respondent's gross earned income. She asserted that the June 15, 1977, order had merely altered the respondent's support obligation during the five-year period, after which the original spousal support provisions were to be automatically reinstated.

The order to show cause came on for hearing in February 1984 before Judge Jerry Pacht. After hearing argument on the spousal support modification, the matter was submitted for the trial court's determination. Following consideration, the trial court entered the following minute order as of February 7, 1984, "The Court finds that the parties knowingly and intelligently entered into a non-modifiable support agreement on March 21, 1977. They were both represented by experienced counsel. Their agreement was recited in open court and was clearly the result of negotiation and compromise. The agreement was reduced to a formal order signed June 1, 1977. The order, prepared by [appellant's] counsel clearly states that it is non-modifiable. [¶] There is no evidence that the agreement was procured by

---

*performance.*
"MR. WASSER: Yes, Your Honor.
"MR. DANIEL: That's correct.
"THE COURT: Over a period of five years. Did I state it accurately now?
"MR. WASSER: Yes.
"THE COURT: Anything else?
"MR. WASSER: It is intended to be spousal support.
"THE COURT: I understand. All right." (Italics added.)
At the time of the hearing, appellant had three motions pending before the trial court: (1) a motion to compel answers and a deposition; (2) a motion re contempt for failure of respondent to pay charges in certain bank credit cards and denial of child's visitations; and (3) a motion for modification of visitation and spousal support. Because appellant's briefs on appeal only address the court's denial of her motion for modification of spousal support, we shall deem the other contentions to have been abandoned.

fraud, duress or any inappropriate means. [¶] Therefore, [appellant's] motion to 'modify' past orders for support is denied, and order to show cause thereon is discharged. (The Court is persuaded it is without jurisdiction to 'modify' any past order; and further persuaded that if it had jurisdiction, it would find [appellant's] motion to be without merit.) The Court retains jurisdiction to entertain motions for attorney fees for bringing or resisting these proceedings."

Appellant filed a timely notice of appeal from the trial court's order of February 7, 1984.

## CONTENTIONS ON APPEAL

Appellant contends, in summary, that the trial court erred in denying her motion for modification of spousal support because:

1. Public policy favors the retention of jurisdiction over spousal support when the language of an agreement or court order is uncertain or ambiguous as to whether the trial court retained jurisdiction to modify or extend spousal support beyond a certain date, and when there is no evidence that the supported spouse will be able to provide for his or her own support subsequent to the projected termination date; and

2. In the alternative, the trial court lacked subject matter jurisdiction in 1977 to modify the previous interlocutory judgment since there was no express reservation of jurisdiction in the interlocutory order which would empower the trial court to make the 1977 modification order.

Respondent controverts these contentions.

## DISCUSSION

### I

### *The Trial Court Properly Denied the Request for Modification*

Appellant first argues that neither the modification order entered in 1977 nor the underlying oral stipulation speaks precisely to the question of whether the trial court retained jurisdiction to modify spousal support after the five-year period which ended March 31, 1982. She argues that the original open-ended reservation in the interlocutory judgment is, by necessity, continued in the 1977 modification order. She also contends that the trial court

erred in finding that the parties intended to terminate spousal support at the end of March 1982.

Appellant relies principally on our Supreme Court's decisions in *In re Marriage of Morrison* (1978) 20 Cal.3d 437 [143 Cal.Rptr. 139, 573 P.2d 41], and *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 [204 Cal.Rptr. 568, 683 P.2d 248]. Appellant's reliance on these decisions is misplaced.

In *Morrison,* wife, Patricia Morrison, appealed from an interlocutory judgment of dissolution contending, in part, that the trial court abused its discretion in failing to retain jurisdiction to award further spousal support after the 11-year period provided in the interlocutory judgment. Her former husband, David Morrison, had petitioned the trial court for dissolution of their 28-year marriage when he and wife were 52 and 54 years old respectively. Wife had certain health problems which made it problematical whether she would ever be able to work full time. She was earning approximately $100 per month in part time employment. Husband, on the other hand, was employed full time earning a combined monthly take home income of $1,456 from his current employment and a military pension.

The *Morrison* court reviewed a number of decisions of the Court of Appeal regarding the guidelines the trial court must use in determining whether or not to retain jurisdiction to extend a spousal support under section 4801, subdivision (d), of the Civil Code,[2] including *In re Marriage of Patrino* (1973) 36 Cal.App.3d 186 [111 Cal.Rptr. 367] (*Patrino*) and *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93 [113 Cal.Rptr. 58] (*Lopez*).[3]

The court in *Morrison* stated: "To support the assertion that one of the goals of the Family Law Act was to curtail the number of modification proceedings, the *Patrino* and *Lopez* decisions rely on section 4801, subdivision (d). This reliance is misplaced for several reasons. Section 4801, subdivision (d), was not, as *Patrino* and *Lopez* assert, a new provision added to the Civil Code with the adoption of the Family Law Act. That subdivision was merely a recodification of former section 139.7, which had been enacted in 1965. The legislative history of former section 139.7 indicates that the Legislature, in adopting this section, had a very different goal in mind than the curtailment of modification proceedings.

---

[2]All statutory references shall be to the Civil Code unless otherwise indicated.

Section 4801, subdivision (d), provides: "An order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction."

[3]The appeals in *Patrino, Lopez* and *Morrison* were from interlocutory orders of dissolution. The appeals challenged the amount and duration of spousal support orders and were taken prior to the time the support was actually terminated. The trial court still had jurisdiction to modify such support.

"*Before the enactment of former section 139.7,* the appellate courts held that a trial court retained jurisdiction to modify an alimony decree at any time during the payment period and it was not necessary to so state in the court's order. The right to extend the duration of such an award and the right to terminate it were part of this power. . . . Further, *no relief could be granted after the specified term in the decree had passed, for the trial court's jurisdiction terminated on that date. . . .*

"The confusion, which was generated by these rules concerning the retention of jurisdiction, led to some unfortunate results for both spouses. Since the trial court was not required to take any affirmative steps to retain jurisdiction during the alimony period, the supporting spouse was not necessarily given any express notice of the court's continuing jurisdiction to extend the period. . . .

"These rules benefited the supported spouse by providing for automatic retention of jurisdiction during the payment period. However, confusion as to how long the court retained that jurisdiction led some supported spouses to erroneously wait until the previously provided alimony had ended before petitioning for an extension. [Citation.] *Even though the request may have come only one day after alimony ended, the court was without jurisdiction to provide relief despite the fact the supported spouse's need may have been great.*

"To eliminate these prevalent misunderstandings of the parties concerning the trial court's retention of jurisdiction, the Legislature changed the decisional law by enacting former section 139.7. [Fn. omitted.] The trial court was required to expressly indicate in its order if it wished to retain jurisdiction. The supporting spouse was put on notice by the court's order that it had the power to extend the alimony payments. It is true that the supported spouse no longer received the benefit of the court's automatic retention of jurisdiction during the period for which alimony had been awarded. However, under the new statute, when the court did retain jurisdiction for an indefinite period of time, the supported spouse would no longer be precluded from petitioning for additional relief after the previously provided alimony had terminated. If the court retained jurisdiction for only a limited period of time, that time period was expressly set forth in the order, so the supported spouse knew the time within which he or she had to petition for additional relief.

"In short, the new statute clarified for both parties whether, and for what period of time, a court retained jurisdiction to extend an alimony order. It was to provide this clarification, not to curtail modification proceedings as

*Patrino* and *Lopez* assert, that the Legislature enacted former section 139.7. [Fn. omitted.]" (*Morrison, supra,* 20 Cal.3d at pp. 445-447, italics added.)

"The enactment of the Family Law Act in 1969 did nothing to change this requirement that a court be guided by the circumstances of the parties in resolving issues relating to spousal support. [Fn. omitted.] As noted, former section 139.7 was recodified as section 4801, subdivision (d), [fn. omitted] with the adoption of that act. . . . Former section 139 was repealed, and a new section, section 4801, subdivision (a), set forth the factors to be considered by a court in setting the amount and duration of spousal support. . . . The major differences between former section 139 and the new section were that the new section eliminated consideration of the comparative marital fault of the parties in setting support, and listed two specific factors to be considered by the court in setting support—the duration of the marriage and the ability of the supported spouse to engage in gainful employment. [Fn. omitted.] . . ." (*Id.,* at p. 449.)

The *Morrison* court was concerned with the trial court's order setting the term of spousal support at a maximum of 11 years because there was no showing that wife would be self-supporting at the end of 11 years. All the evidence in the record was to the contrary and therefore the trial court abused its discretion in divesting itself of jurisdiction to award future support to her after the 11-year period had elapsed.

The facts of the present appeal are distinguishable from *Morrison* because appellant agreed to the court's modification of spousal support and did not challenge the modification until 13 months after the spousal support had ceased pursuant to the stipulation and order. The court in *Morrison* was concerned with the length of the period set for spousal support and not with the precise question presented in this appeal, namely, whether the trial court could modify a spousal support order after the date specified for termination of support when the supporting spouse had fully complied with the order.

This precise question was presented to the appellate court in *Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708 [63 Cal.Rptr. 439], and decided under former Civil Code section 139.7. In *Maben,* the wife, Doris Maben, obtained an interlocutory judgment of divorce from her husband, Malcolm Maben, in May 1958. The interlocutory judgment ordered husband to pay wife $600 per month as alimony commencing May 1, 1958, but was silent as to the continuing jurisdiction of the court to modify the award. In March 1962, on husband's motion, the interlocutory judgment was modified and he was required to pay wife $485 per month as alimony commencing April 1, 1962, and again the order was silent as to the continuing jurisdiction of the court to modify. On December 30, 1965, on husband's order to show

cause, the court modified the prior support order and provided that husband was to pay wife support and maintenance for 12 months at $250 per month commencing January 1, 1966, and continuing for 11 months; thereafter alimony was to terminate. Husband fully complied with the provisions of this December 30, 1965, order.

In January 1967, wife obtained an order requiring husband to show cause why the provisions of the December 1965 order should not be further modified so as to provide for further payment of alimony. Husband then sought a writ of prohibition in the Court of Appeal to restrain the superior court from taking any further proceedings based on the order to show cause claiming that the trial court had no jurisdiction to do so by reason of former section 139.7.[4] Husband contended that the trial court's order of December 30, 1965, expressly provided that wife's right to alimony should terminate with the last payment in December 1966, and that the trial court lacked jurisdiction to modify the spousal support after the expiration of the period. Wife, on the other hand, contended that former section 139.7 "modifies previous law by expanding the jurisdiction of the court to extend alimony allowed for a limited period even if the application for such modification is filed after the period has expired if there is a reservation of jurisdiction in the 'original order.' She necessarily also argue[d] that the original order [was] the 1958 interlocutory judgment in which jurisdiction was retained by implication of law. [Fn. omitted.]" (*Maben, supra,* 255 Cal.App.2d at p. 712.)

The appellate court in *Maben* concluded that ". . . the phrase 'original order' as used in section 139.7 . . . refers to the latest order in point of time in which the court has made an allowance for the support of either party. That order may be the interlocutory judgment or, as here, may be an order modifying an earlier order for the payment of alimony under the provisions of section 139 of the Civil Code. As we see it, the Legislature intended to provide that the obligation of one party to pay for the support of the other party pursuant to section 139 shall terminate at the end of the period specified in the latest order and shall not be extended unless the court in *that* order expressly retains jurisdiction." (*Ibid.,* italics in original.)

The court in *Maben* held that since the order requiring husband to show cause why he should not be required to make additional payments was not issued until January 13, 1967, the court had no jurisdiction to extend the allowance for the support of wife beyond December 31, 1966. *Maben* was

---

[4]Former section 139.7 provided: "An order for payment of an allowance for the support of one of the parties pursuant to section 139 shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains jurisdiction."

considered and discussed by our Supreme Court in *In re Marriage of Vomacka, supra,* 36 Cal.3d 459. *Vomacka* did not deal with the precise question presented in this appeal but contains persuasive dicta with respect to *Maben* which is dispositive of the issue presented in this appeal.

In *Vomacka, supra,* 36 Cal.3d at pages 461-462, the trial court entered an interlocutory judgment of dissolution which provided, among other things, that husband, William Vomacka, was to pay his wife, Joyce Vomacka, the sum of $275 as support commencing September 1, 1979, which was " 'to continue each month thereafter until further order from the Court, the death of either party, the remarriage of [wife], or August 1, 1982, whichever first occurs. *The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [wife's] right to request spousal support from [husband] shall terminate forever.' "* (Italics in original.)

On June 29, 1982, wife obtained an order to show cause seeking, inter alia, to modify the spousal support provision in the interlocutory decree. An order was issued which provided that husband would be required to continue his support payments to wife, increased to $600 per month until the death of either party, remarriage of wife, or until further order of the court. The trial court explained in its intended decision its reasoning for providing spousal support beyond the dates specified in the interlocutory order and made the following explanation: " 'To find from an agreement that there is a termination of spousal support, the Court must find explicit language of such termination. The alleged termination provision herein is not sufficiently explicit to find such termination (purports to terminate [wife's] right to ask for additional support; does not address itself explicitly to the termination of support). Thus, the Court finds that there is no absolute termination herein on September 1, 1984. (See *In re the Marriage of Moore* (1980) 113 Cal.App.3d 22 [169 Cal.Rptr. 619].)' " *(Vomacka, supra,* 36 Cal.3d at p. 462.)

The trial court issued its order modifying spousal support. Husband appealed contending that the trial court had exceeded its jurisdiction in modifying the interlocutory judgment to extend spousal support payments beyond the date contained in the judgment. Husband argued that the trial court's decision was contrary to the parties' agreement and violated section 4811, subdivision (b),[5] which permits the parties to agree that the provisions

---

[5]Section 4811, subdivision (b), provides: "The provisions of any agreement for the support of either party shall be deemed to be separate and severable from the provisions of the agreement relating to property. All orders for the support of either party based on the agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make the orders. The provisions of any agreement or order for the support of either

of any agreement or order for the support of either party shall not be subject to subsequent modification or revocation by court order.

In *Vomacka,* wife's request for modification of support was made prior to the termination date specified in the interlocutory order. This is the distinguishing feature of *Vomacka* and the case at bench.

The interlocutory order also specified, unlike the present appeal, that the support payments were to "continue until further order of the court" or the occurrence of the other events listed. The court in *Vomacka* concluded that there was insufficient language in the modification order to support the finding of nonmodifiability and stated that the record on appeal "does not contain a transcript of the trial court proceedings, presumably waived by the parties, and therefore contains no reference to the oral statements of the parties during any of the dissolution proceedings. . . . [¶] As there is no evidence of a written or oral agreement of the parties prohibiting modification of the interlocutory decree, we reject [husband's] argument that the subject order violates the limitation on judicial modifications set forth in section 4811, subdivision (b)." (*Vomacka, supra,* 36 Cal.3d at p. 465.)

■ Unlike *Vomacka,* the record in the case before us contains the parties' agreement regarding termination of spousal support. The parties to this appeal dispute whether the language contained in the oral stipulations made in open court and incorporated in the 1977 modification order are certain and unambiguous. The trial court found the language to be clear and unambiguous, and the evidence supports the trial court's conclusion. Certainly, appellant's actions in failing to seek relief until over a year after the five-year period had elapsed is consistent with the trial court's finding.

The trial court's conclusion that it lacked jurisdiction is supported by the *Vomacka* decision. In its footnote 12, the *Vomacka* court stated in pertinent part, in reference to the decision in *Maben,* that *Maben* is "factually distinguishable from the instant case. In *Maben,* the second modification of the original spousal support award . . . was made after the enactment of former section 139.7 and provided in pertinent part that spousal support should 'continu[e] for 11 months thereafter at which time alimony shall terminate.' . . . *Unlike the instant case, the request for extension of spousal support was properly denied because brought after the expiration of this 11-month period, that is, after the court's jurisdiction had clearly ceased.*" (*Vomacka,*

---

party shall be subject to subsequent modification or revocation by court order, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary."

*supra*, at p. 473, italics added.) Footnote 12 in *Vomacka* is dispositive of the issue presented herein because *Vomacka* concludes that the trial court's jurisdiction ceases when the termination date passes.

Following the reasoning in *Vomacka* and *Maben,* we conclude that the trial court properly denied the request for modification. We see no violation of public policy in our holding since requiring a party to seek a modification order prior to the termination date serves to provide certainty to the parties involved in dissolution proceedings as to their respective obligations and expectations under support arrangements. During this five-year period, respondent provided appellant the agreed support payments. Appellant had ample opportunity to seek relief in the trial court. We cannot accept her argument that the term "nonmodifiable" as used in the oral stipulation and in the 1977 modification order was strictly limited to the five-year period and that the support arrangements would thereafter revert to the original provisions for support contained in the 1976 interlocutory judgment. Our conclusion is further supported by the additional language providing for termination after the expiration of five years and the absence of any reference to possible court action by the insertion of the words "further order of the court" during the five-year period as was present in the interlocutory order in *Vomacka.*

As the court said in *In re Marriage of Hawkins* (1975) 48 Cal.App.3d 208, 213 [121 Cal.Rptr. 681], "The parties to a property settlement are entitled to relinquish the possibility of a potentially more beneficial support order in exchange for certainty of their rights and obligations. Because of that certainty, both can better plan their affairs and adjust their lives to the new circumstances created by the termination of a long marriage."

While the *Hawkins* decision was issued in connection with the husband's attempt to modify a previously entered support order approving the parties' agreement, it nonetheless has the same persuasive ring when applied to the modification order between the parties in this appeal. Both appellant and respondent in the instant appeal were represented by competent counsel; appellant was a law school graduate and an experienced accountant; and respondent was a practicing lawyer. Both appellant and respondent were thus highly educated, adequately represented, and persons capable of making an intelligent decision as to their financial arrangements. Any ambiguity must be resolved against the appellant whose counsel drafted the agreement. (*Ecco-Phoenix Electric Corp.* v. *Howard J. White, Inc.* (1969) 1 Cal.3d 266, 275 [81 Cal.Rptr. 489, 461 P.2d 33]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 535, pp. 456-457.)

Appellant has presented us with no facts or argument which would justify a more lengthy support arrangement as was present in *Morrison*. Given these circumstances, it is understandable that the appellant would have agreed to potentially less lifetime support in exchange for a more certain and regular five-year arrangement.

II

*The Trial Court Had Jurisdiction to Modify*
*the Previous Interlocutory Order*

Appellant argues, in the alternative, that the trial court lacked jurisdiction in 1977 to modify the 1976 interlocutory order because there was no express reservation of jurisdiction in the interlocutory order permitting any modifications by the trial court. Appellant argues, therefore, that the trial court lacked subject matter jurisdiction to approve the 1977 modification agreement. This argument is meritless.

The 1977 modification order was entered pursuant to an agreement between the parties and recited in open court by counsel. The agreement was later incorporated in a document prepared by appellant's attorney, signed by the court and entered in the court's records. Both parties submitted to the jurisdiction of the trial court in making the modification for support. The trial court had fundamental jurisdiction over the parties and the subject matter of spousal support under section 4811, subdivision (b), even without an explicit reservation of jurisdiction in the interlocutory judgment.

Section 4811, subdivision (b), provides in pertinent part: "All orders for the support of either party based on the agreement [for spousal support] shall be deemed law-imposed and shall be deemed made under the power of the court to make the orders. *The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order . . . .* " (Italics added.)

There was no lack of subject matter jurisdiction and the trial court had the power to make the 1977 order modifying the support to appellant. (See *Vomacka, supra,* 36 Cal.3d 459 at p. 472; *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755, 759-760 [191 Cal.Rptr. 267]; and *Esserman* v. *Esserman* (1982) 136 Cal.App.3d 572, 578 [186 Cal.Rptr. 329].)

### DISPOSITION

The order appealed from is affirmed.

Klein, P. J., and Danielson, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 18, 1986.