Filed 5/19/22  Marriage of Fraser CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of JOHN CAMERON FRASER III and KARA C. FRASER. | |
| | D079148 |
| JOHN CAMERON FRASER III, | |
| Appellant, | (Super. Ct. No. DN181357) |
| v. | |
| KARA C. FRASER, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Pennie K. McLaughlin, Commissioner.  Affirmed.

Fleischer & Ravreby, Myra Chack Fleischer and Tana Landau for Appellant.

Yelman & Associates and Sara R. Neumann for Respondent.

John Cameron Fraser III appeals a post judgment order modifying spousal support and reserving jurisdiction.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

John and Kara C. Fraser[1] married on June 4, 1999 and separated on December 15, 2014, for a marriage of 15 years and six months. They have two minor children together. John filed for dissolution of marriage on December 16, 2014. The marriage was deemed to be of a long duration.

Kara met John Kennedy, Jr. in October 2014 while she was still married to John. They began a relationship in mid-2015. During the dissolution matter, Kara was pregnant with Kennedy's child, who was born on May 31, 2016.

Through Judicate West, retired Judge Christine Goldsmith presided over a trial on certain reserved issues over a 5-day period between February 22, 2017 and March 3, 2017.[2] Among other issues, Judge Goldsmith addressed spousal support. As such, Judge Goldsmith explained in the written judgment (Judgment) as follows:

> "Effective April 1, 2017, spousal support is set at $7,500 per month. This order will not meet the marital standard of living. It will not meet [Kara's] articulated monthly expenses per her Income and Expense Declaration. The standard of living is no longer available to either party. This order is effective through March 31, 2021 at which time it is reduced to $5,000 per month until death, remarriage, cohabitation in an intimate relationship or further order of the court."

At the time Judge Goldsmith issued the Judgment, it is clear she was aware that Kara had an infant child with Kennedy, but there is no indication

---

[1]  As is customary in family law cases, we will refer to the parties by their first names. (*Noergaard v. Noergaard* (2015) 244 Cal.App.4th 76, 81, fn. 2.)

[2]  Other issues like custody, visitation, and disposition of the marital residence were resolved earlier. Because those issues are not relevant to this appeal, we eschew any further discussion of them.

that the court found that Kara and Kennedy were cohabitating at that time: "[Kara] has an infant from another relationship. [Kennedy] lives in the County and is available to assist."

Kara's motion for a new trial was denied. Neither John nor Kara appealed the Judgment.

John was diagnosed with cancer in early December 2017. John informed Kara of his health condition in January 2018 and attempted to get her to agree to modify the amount of support. The parties did not reach an agreement regarding a modification.

For reasons not explained in the record, following the trial that ended on March 3, 2017, the Judgment was not entered for almost a year. It finally was entered on February 13, 2018. On March 16, 2018, John filed a request for order to modify child support and spousal support as well as for an award of attorney fees. Among other issues, John requested that the court terminate spousal support (or reduce it to zero) because Kara was "living in [a] spousal relationship and [he] ha[d] been unable to work much because [he is] fighting a cancer diagnosis and treatment." Apparently, John ceased making spousal support payments in November 2017. A long cause evidentiary hearing was set for March 8, 2019.

On December 10, 2018, Kara filed a request for an order for spousal support arrears, a security account, and attorney fees. This request also was set to be heard on March 8, 2019. On March 8, 2019, the parties agreed to continue the hearing for an Evidence Code section 730 expert to perform an income available for support analysis of John's business.

Relevant here, in his trial brief, John argued for a spousal support modification because he was earning significantly less than when the amount of support previously had been set, Kara failed to make reasonable efforts to

3

become self-sufficient, and Kara had been cohabitating with a nonmarital partner. Moreover, John explained, based on Family Code[3] section 4320, why the court should modify the amount of spousal support. In addition, John filed a memorandum of points and authorities regarding cohabitation wherein he argued that Kara and Kennedy had been in a continuous relationship since 2015 and, as of August 7, 2020, Kara and Kennedy had been living together for four months. John also contended that Kennedy contributed to household expenses and the care of Kara and Kennedy's daughter. Based on this cohabitation, John requested that spousal support be terminated or set at zero.[4]

On August 20, 2019, at a scheduling conference, Kara indicated she opened a case with the Department of Child Support Services (DCSS). Eventually, a date for the evidentiary hearing was set for January 17, 2020. However, the hearing did not begin until August 7, 2020, with additional hearing days on February 5 and 24, 2021.

At the evidentiary hearing, John, Kara, Kennedy, and Clementina Alfaro[5] testified. The parties do not disagree about the evidence at the hearing or challenge the court's factual findings. As such, we will not detail the witness's testimony but instead discuss the court's factual findings based on the testimony.

---

[3]     Statutory references are to the Family Code unless otherwise specified.

[4]     The record does not include a trial brief filed by Kara.

[5]     Alfaro used to work for Kara in 2015 but had not worked for her since then. She testified that she would visit Kara twice a week for a couple hours and sometimes take her daughter to the park.

4

Before the parties gave their closing arguments, the court explained its tentative findings on the cohabitation issue. To this end, the court reasoned:

> "So my tentative findings would lead to—as I indicated earlier, I believe by the clear language of the judgment, 'cohabitation in an intimate relationship,' that this Court is bound by that. I don't interpret it otherwise, so it would exclude the other marriage debt. And so it's a category just like remarriage and [death], is my finding. That's the plain meaning of that sentence in the judgment. So beginning April 1st, 2020, the Court would set spousal support at zero and reserve on that issue by the plain language contained in the judgment.
>
> "However, from April 1st, 2018, through March 31st, 2020, I do find, while [Kara] may have had a decreased need for spousal support due to her cohabitation, I don't find that it was the cohabitation that occurred April 1st of 2020. And that's based on the following:
>
> "I recognize that they were in a continuous romantic relationship. Mr. Kennedy leased the car, he paid some of the bills, their daughter lived in the home, and that he spent anywhere from—anywhere up to 71 percent of the time together at that point. And there was evidence that he spent six nights a week, depending on how much weight I wanted to give that. So there is evidence that there was some level of decreased need due to the presence of the romantically involved Mr. Kennedy with [Kara]. And for that reason, I did consider what would make sense.
>
> "I don't believe zero would make sense. I believe [Kara] still had a need for spousal support. I went through all the factors, the disparity in income. I also found [Kara] did

not, as a tentative finding, didn't abide by the *Gavron*[6] warning to avail yourself of opportunities or look for them before the pandemic. We talked about that, and that you have marketable skills. You did some incredible work for Advantech, and I looked at that vocation evaluation.

"So there are some other findings, as well. But my tentative was to set spousal support to the reduced amount of 3,500, even in light of [John's] medical condition, your setbacks during some of this period, to 3,500 per month from April 1st, 2018, through March 31st of 2020."

During her closing argument, among other things, John's counsel argued that the Judgment "ma[d]e it very clear that any level of cohabitation, because of what was happening even before the judgment was entered, gave rise to Judge Goldsmith entering into an order that said cohabitation of any form, because it was already there, led to termination just like death, just like marriage. Cohabitation ends it. And when we filed, it ended it, because she was cohabitating, Your Honor, even though it wasn't a hundred percent

---

6    In *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*), the court held that, without a "reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences," failure of the supported spouse to become self-supporting cannot be a "changed circumstance" sufficient to consider a modification of support. (*Id.* at p. 712.) "Thus, what has become known as a '*Gavron* warning' is a fair warning to the supported spouse he or she is expected to become self-supporting." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 55.)

until April 1st, 2020. And the case law that we have elucidated in our Points and Authorities shows it."[7]

During her closing argument, Kara's attorney disagreed with the court that, as of April 1, 2020, Kara and Kennedy were cohabitating. She maintained that Kennedy began staying at Kara's residence because of the COVID pandemic. Kennedy was living with his elderly parents but did not think it was safe to travel between homes. So, he started staying with Kara. However, Kara's attorney emphasized that he did not do so to support Kara or "manifest a married-type relationship." Counsel further argued that Judge Goldsmith knew, at the time she entered the Judgment, that Kara and Kennedy were in a relationship, had a child together, and Kennedy sometimes spent the night at Kara's house. As such, counsel argued, "I don't think [cohabitation] was intended by her to be a terminating factor under that context, because that existed at the time of the judgment."

The court responded that it did not believe "there [were] the same significant factors in existence in front of Judge Goldsmith that we have today." To this end, the court noted Kennedy's own testimony, indicating that he had been cohabitating with Kara since 2020.

In its written order following the hearing, the court decreased the amount of spousal support to $3,500 per month for the period of April 1, 2018 through March 31, 2020. The court reduced spousal support to zero on April 1, 2020, but set a reserved order. The court explained that it found a

---

7    Although it appears that John made certain legal arguments below regarding what constitutes cohabitation (including providing case law), he did not do so in his opening brief. Because John did not brief this issue on appeal, we do not consider the case law on which he relied below. (See *Garrick Development Co. v. Hayward Unified School Dist. (*1992) 3 Cal.App.4th 320, 334.)

"substantial change of circumstances" supporting a modification in the amount of spousal support.  The court then discussed these changes as follows:

> "For the first period of time, the Court finds that Mr. Kennedy and [Kara] meet the requirements for a cohabitation finding pursuant to Family Code section 4323 based upon the fact that Mr. Kennedy spent, depending on the testimony of both, up to 71% of this time living under the same roof with [Kara] and the daughter they shared. The court finds that Mr. Kennedy did live outside of the home for a couple of days a week when he stayed with his parents. . . .  More importantly, however, is the fact that Mr. Kennedy did, during this period and beyond, pay several household expenses, including the water, cable and internet bills and food for the daughter and himself.  In addition, Mr. Kennedy testified that he had a shared bank account with [Kara], though [Kara] argued that it was only for their daughter and her needs.  Further, the Court finds that there has been a continuous intimate relationship between [Kara] and Mr. Kennedy since 2015.  [Kara] used this fact to support her argument that this was the same situation at the time the Family Court made its findings in the Judgment.  The facts before the Court demonstrate that [Kara] moved to a new residence after the Family Court trial and it is there that Mr. Kennedy then began to spend up to 71% of his time per week together with [Kara], her other kids and their daughter.

> "After considering Family Code section 4323 and the applicable case law, the Court finds that [Kara], in spite of the significant cohabitation with Mr. Kennedy, had a decreased need for spousal support, but does not find that under the circumstances present, prior to April 1, 2020, that it would be just to set spousal support at zero or terminate it.

> "Under Family Code section 4320, the Court finds that for the period of April 1, 2018 through March 31, 2020, [Kara] had a decreased need for spousal support given her

8

intimate relationship with Mr. Kennedy and the factors noted above regarding his financial support."

The court subsequently added: "Beginning April 1, 2020, the Court finds 'cohabitation in an intimate relationship' within the plain meaning of the language used in the Judgment due to Mr. Kennedy's full-time cohabitation with [Kara] from that date forward, and according to the terms of the Judgment, sets spousal support at a reserved order."

John timely filed a notice of appeal.

## DISCUSSION

### A. John's Contentions

John argues that the court found that Kara and Kennedy were cohabitating as of July 2017 when Kara moved into her new residence. He thus contends that, under the express language of the Judgment, his obligation to pay spousal support terminated at that time. He also argues that upon the termination event (the July 2017 cohabitation), the court was divested of jurisdiction and could take no further action, including reducing spousal support to $3,500 during the period of April 1, 2018 to March 31, 2020 and setting a reserved order. We reject these contentions.

### B. Relevant Law and Standard of Review

Section 4330, subdivision (a) permits a trial court to "order a party to pay for the support of the other party an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances as provided in Chapter 2 (commencing with Section 4320)." Section 4320 sets forth a number of circumstances relevant to setting spousal support, including the extent to which each party's earning capacity is sufficient to maintain the standard of living established during the marriage (subd. (a)); the extent to which the supported party contributed to the supporting party's

9

training or career (subd. (b)); the supporting party's ability to pay (subd. (c)); each party's needs based on the marital standard of living (subd. (d)); each party's assets and obligations (subd. (e)); the duration of the marriage (subd. (f)); the age and health of the parties (subd. (h)); the balance of hardships to each party (subd. (k)); the goal that the supported party be self-supporting within a reasonable time period (subd. (l)), and any other factors the court deems just and equitable (subd. (n)).

A spousal support award may be modified only if the court first finds a material change in circumstances since the time the prior order was entered. (*In re Marriage of Dietz* (2009) 176 Cal.App.4th 387, 396 (*Dietz*).) "Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order." (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480.) A change of circumstances includes all factors affecting the supported spouse's needs and the supporting spouse's ability to pay (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246 (*West*)), including cohabiting with a nonmarital partner. (See § 4323, subd. (a)(1) ["there is a rebuttable presumption, affecting the burden of proof, of decreased need for spousal support if the supported party is cohabiting with a nonmarital partner"].) Thus, if the supported spouse cohabitates with a nonmarital partner, that spouse must show his or her "need for spousal support had not diminished." (*In re Marriage of Schroeder* (1987) 192 Cal.App.3d 1154, 1161.)

If there is a material change in circumstances, the court evaluates whether to modify spousal support based on the same factors that apply in setting initial spousal support awards. (§ 4320; *West, supra,* 152 Cal.App.4th at p. 247; *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1235 (*Shaughnessy*).) Although the trial court must consider all of the enumerated

10

factors under section 4320, it has broad discretion as to the weight to give each factor. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304.)

We review a trial court's modification of spousal support for abuse of discretion. (*Dietz, supra,* 176 Cal.App.4th at p. 398.) In exercising its discretion, the trial court must apply established legal principles and base its findings on substantial evidence. (*Shaughnessy, supra,* 139 Cal.App.4th at p. 1235.) If the trial court follows these requirements, its order modifying spousal support will be upheld regardless of whether the appellate court would have made the same order. (*Ibid.*)

C. Analysis

Below, the court "conducted a thorough review of all applicable factors pertaining to spousal support and weighed them in arriving at the modification to $3,500 per month for the time period of April 1, 2018 through March 31, 2020." And beginning on April 1, 2020, the court set "a reserved order for spousal support." In reaching these conclusions, the court explained that it reviewed previous orders for spousal support, the *Gavron* warning given to Kara, and the arguments of counsel while considering the applicability of section 4323 and the issue of cohabitation. In addition, the court explicitly stated it "conducted an analysis within the framework of the Judgment[.]"

The court found a change of circumstance warranted a modification of spousal support from April 1, 2018 to March 31, 2020. To this end, it explained that it found that Kara and Kennedy were cohabitating up to 71 percent of the time from April 1, 2018 to March 31, 2020. Further, the court determined that, during this period, Kennedy paid several household expenses and shared a bank account with Kara. Although Kara had argued that the circumstances were the same as when the court previously ordered

11

spousal support in the amount of $7,500, the court disagreed, finding a "substantial change of circumstances[.]"

Finding that Kara and Kennedy were in an intimate relationship, cohabiting up to 71 percent of the time, and Kennedy was paying for some household expenses, the court concluded that Kara had a decreased need for spousal support. As such, the court reduced the amount of support by over 50 percent. Further, the court explained how the factors under section 4320 impacted its analysis. The court, however, determined that it would not be just to set spousal support at zero or terminate support all together during the period of April 1, 2018 to March 31, 2020.

The court then explained that it found "[b]eginning April 1, 2020, . . . 'cohabitation in an intimate relationship' within the plain meaning of the language used in the Judgment due to Mr. Kennedy's full-time cohabitation with [Kara] from that date forward, and according to the terms of the Judgment, set[ ] spousal support at a reserved order." In making this finding, the court rejected Kara's argument that her cohabitation with Kennedy was one of necessity based on the COVID pandemic and should not be viewed as "cohabitation in an intimate relationship."

In the instant matter, John does not appear to be challenging any of the court's factual findings. Rather, John asserts that the court found that Kara and Kennedy were cohabitating "as of when [Kara] moved to her new residence post judgment in 2017." Based on this alleged finding, John then argues that, per the terms of the Judgment, his obligation to pay spousal support terminated in July 2017 and the court was without jurisdiction to extend spousal support past that date. In other words, John insists the court should have ordered spousal support terminated upon a finding of

12

cohabitation in July 2017 and taken no further action on the issue.  We reject John's argument for two primary reasons.

First, there does not appear to be support in the record that the court found Kara and Kennedy were cohabitating in July 2017.  Indeed, in the court's written order, there is no such finding.  Instead, the court indicated that it found that, during the period of April 1, 2018 through March 31, 2020, Kara and Kennedy were cohabitating "up to 71" percent of the time, and Kennedy was paying some household expenses.  Further, it appears the court used the starting state of April 1, 2018 based on John's arguments below: "[John] argued that [Kara] had been cohabitating and in an intimate relationship within the plain meaning of Family Code section 4323 for years, and that spousal support should be terminated, or set at zero, beginning April 1, 2018."  Here, John does not claim the court misconstrued his argument.  However, he baldly concludes the court found cohabitation as of July 2017.  The court did not make that finding.  Rather, the court expressly stated that it found cohabitation, under section 4323, for "the first period of time," which was April 1, 2018 through March 31, 2020.

Second, John does little more than to assert that spousal support terminated upon the finding of cohabitation and, on the basis of such finding, the court lost jurisdiction to take any further action regarding spousal support.  In making this argument, John does not provide us with any legal authority.  He does not discuss the terms of the Judgment and explain why the court's finding of cohabitation, as of April 1, 2018, resulted in the termination of spousal support.  Instead, he merely concludes that it is so.  Such a cursory argument does not carry the day.

"The burden of affirmatively demonstrating error is on the appellant." (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th

13

966, 971; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 (*Falcone*).) "Appellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' " (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 (*Nelson*); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*Malibu Hillbillies*) [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].) In addition, we do not scour the record and make arguments on the appellant's behalf. (See *Falcone*, at p. 830 ["We are not bound to develop appellants' arguments for them"].)

Here, John asserts the court's finding of cohabitation terminated spousal support under the Judgment, but he does not explain why. In the absence of any argument supported by legal analysis, we deem this issue waived. (See *Malibu Hillbillies*, *supra*, 36 Cal.App.5th at p. 153; *Nelson*, *supra*, 172 Cal.App.4th at p. 862.) Moreover, even if we considered John's argument on the merits, we would find it wanting.

The Judgment established spousal support at $7,500 per month, effective April 1, 2017 through March 31, 2021, at which time it would be reduced to $5,000 per month until death, remarriage, cohabitation in an intimate relationship or further order of the court. Below, Kara argued that, under the terms of the Judgment, spousal support could not be terminated by "cohabitation in an intimate relationship" until, at the earliest, March 31, 2021. The court rejected Kara's interpretation of the Judgment, observing that such an interpretation was "not consistent with the plain meaning" of the Judgment and "just doesn't make sense."

14

However, the court was not persuaded by John's argument that if it found that Kara was cohabiting ("of any form") with Kennedy then spousal support must be terminated. Moreover, the court emphasized that it would need to consider the definition of cohabitation because it had not found that Kennedy lived with Kara full-time during the entire period in question.

Thus, the court declined to follow Kara's interpretation of the Judgment that cohabitation could not be considered until March 31, 2021. And it rejected John's argument that any cohabitation qualified as "cohabitation in an intimate relationship" as set forth in the Judgment. The court then considered the evidence and applied that evidence to the factors set forth in section 4320 and the presumption in section 4323 to fashion, what it believed to be, a fair and just result considering the circumstances. As such, the court, based on its finding of changed circumstances, significantly reduced spousal support from the period of April 1, 2018 to March 31, 2020. Then it found that, as of April 1, 2020, Kara and Kennedy were cohabitating in an intimate relationship as specified in the Judgment and thus spousal support should be reduced to zero. Implicit in the court's reasoning is that it determined "cohabitation in an intimate relationship" as set forth in the Judgment required that Kara be living full time with an intimate partner. Here, where John does not provide any argument explaining why the court's interpretation of "cohabitation in an intimate relationship" is erroneous and does not challenge any of the factual findings made by the court, John does not even provide us with an avenue in which to consider whether the court abused its discretion. Moreover, on the record before us, we are satisfied it did not.

We next turn to John's argument that the court lacked jurisdiction to modify the spousal support after making a finding of cohabitation.

15

Specifically, John contends the court could not have modified the amount of spousal support after finding that Kara and Kennedy were cohabitating in July 2017, unless one of the parties moved to modify or extend spousal support before July 2017. Therefore, John asserts the court had no jurisdiction to modify the spousal support after July 2017 and erred in reducing spousal support to $3,500 per month for the period of April 1, 2018 through March 31, 2020. We disagree.

As we discussed *ante*, the court did not find "cohabitation in an intimate relationship" as set forth in the Judgment as of July 2017. Thus, for this reason alone, we find John's argument has no merit.

In addition, John's contention makes little sense on the record before us. Among other contingencies, the Judgment declares that spousal support ends if there exists "cohabitation in an intimate relationship." However, that phrase is neither defined in the Judgment nor the Family Code. Further, it is clear the parties do not agree on what the phrase means. John takes the position that any cohabitation, in any form, satisfies the contingency. Kara, on the other hand, argues that the contingency cannot even be considered until March 31, 2021. She also disagreed below that she is cohabitating in an intimate relationship as of April 1, 2020, despite Kennedy living with her full time. To this end, she argued that Kennedy was not cohabitating with her in an intimate relationship but was staying with her out of necessity because of the COVID pandemic. These arguments make clear that court intervention was necessary here to determine whether "cohabitation in an intimate relationship" exists. In other words, if one of the parties believed that contingency was triggered and the other party disagreed, then a petition to modify spousal support would be the logical means to resolve the disagreement. And that is precisely what occurred here. John brought a

16

petition to modify the amount of spousal support on March 16, 2018. He did so after the date on which he argues the court lacked the jurisdiction to act. It borders on nonsensical to argue that a court has no jurisdiction to act on the very issue one petitions the court to address.

Finally, we are not troubled by the court's reservation order on the spousal support issue after setting the support amount at zero. As noted in *In re Marriage of Ousterman* (1996) 46 Cal.App.4th 1090 (*Ousterman*), *In re Marriage of Vomacka* (1984) 36 Cal.3d 459 (*Vomacka*) and its progeny held that the court had jurisdiction to extend support beyond the agreed upon date for termination of spousal support, unless the agreement explicitly states an intent to preclude jurisdiction to extend support beyond the specified expiration date. (*Ousterman*, at p. 1097.) In *Vomacka*, the spousal support agreement provided for payment of a specified amount of support " 'until further order from the Court, the death of either party, the remarriage of [wife], or August 1, 1982, whichever first occurs. *The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [wife's] right to request spousal support from [husband] shall terminate forever.*' " (*Vomacka*, at pp. 461-462, original italics.)

In concluding the court retained jurisdiction to modify support after the date specified in the support agreement, the court in *Ousterman* explained that in *Vomacka*, *supra*, 36 Cal.3d 459, "The court rejected the husband's argument that jurisdiction over support ended on the date specified in the original agreement, finding that the court had jurisdiction *until* that date to modify the award, including to extend the duration of support." (*Ousterman*, *supra*, 46 Cal.App.4th at pp. 1095-1096.)

In *Vomacka*, the court's finding of implied retention of jurisdiction to extend support beyond the support termination date was based on the

17

following policy reasons:  "First, especially in the case of marriages of long duration, orders providing for absolute termination of spousal support on a specified date are disfavored unless the record clearly indicates the supported spouse will be able to adequately meet his or her financial needs at the time specified for termination.  ([*Vomacka*, *supra*,] 36 Cal.3d at p. 467.)  Second, 'where there is an ambiguity in the language of a marital property agreement it must be decided in favor of the right to spousal support.' (*Id*. at p. 469.)  Finally, 'language in a spousal support order suggesting that modification of its terms will be permitted is routinely interpreted as a retention of the court's fundamental jurisdiction to modify and, upon a proper factual showing, to extend the spousal support provisions contained therein.' (*Id*. at p. 470.)"  (*Ousterman*, *supra*, 46 Cal.App.4th at p. 1096.)

As concluded in *Ousterman*, *Vomacka*, and their progeny, " 'to be effective, language in a marital agreement intended to preclude jurisdiction to extend support ha[s] to be stated rather explicitly.  Implications drawn from the agreement suggesting possible intention to reserve jurisdiction would be favored.' " (*Ousterman*, *supra*, 46 Cal.App.4th at p. 1097, quoting *In re Marriage of Jones* (1990) 222 Cal.App.3d 505, 512.)

In the instant matter, the Judgment does not contain any language precluding the court's jurisdiction.  Indeed, the Judgment set spousal support at $7,500 until March 31, 2021 at which date it would be reduced to $5,000.  Therefore, although spousal support is subject to modification, the Judgment, on its own terms, contemplated support lasting beyond March 31, 2021.  That said, the Judgment did list certain circumstances in which spousal support would end.  Accordingly, the Judgment stated that spousal support would continue "until death, remarriage, cohabitation in an intimate relationship or further order of the court."  Yet, we do no read these potential termination

18

circumstance as explicitly stating the court would lose jurisdiction at that point. Further, the court issued a reserve order as to spousal support at the same time it decreased the amount of spousal support for a period and then reduced it to zero. And it did so in response to a petition brought by John. Without such petition, there would have been no finding supporting the reduction of spousal support to zero. Therefore, the court did not err in issuing an order continuing its jurisdiction even after it concluded spousal support should be set at zero upon its finding of "cohabitation in an intimate relationship." (See *Vomacka, supra,* 36 Cal.3d at p. 461; *Ousterman, supra,* 46 Cal.App.4th at p. 1097.)

Additionally, John's and Kara's marriage was determined to be of long duration,[8] and the court's jurisdiction is assumed under the Family Code. "An order for spousal support terminates at the end of the period provided in the order and shall not be extended unless the court retains jurisdiction in the order or under Section 4336." (§ 4335.) "Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage or for legal separation of the parties where the marriage is of long duration." (§ 4336, subd. (a).) Consequently, sections 4335 and 4336 support the court issuing a reserve order below.

In short, we conclude that, because the Judgment does not expressly state that jurisdiction over support terminated on a date certain or upon the occurrence of some event, the trial court had jurisdiction to enter a reserve order.

---

[8] In general, a marriage that lasts 10 years or more, from the date of marriage to the date of separation, is a marriage of long duration. (§ 4336, subd. (b).)

19

DISPOSITION

The order is affirmed.  The parties are to bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.